425 F.3d 86
 UNITED STATES of America, Appellee,
v.
Juan SANTOS, also known as Polo, and Alejandro Paulino, also known as Alex, Defendants,
Angel Rodriguez, Faustino Delarosa, Edgardo Vazquez Baez, Kenneth Rodriguez, Defendants-Appellants.
 Docket No. 03-1639.
 United States Court of Appeals, Second Circuit.
 Argued: March 2, 2005.
 Decided: October 3, 2005.
 
 COPYRIGHT MATERIAL OMITTED Stephen A. Miller, Assistant United States Attorney (David N. Kelley, United States Attorney for the Southern District of New York, and Katherine Polk Failla, Assistant United States Attorney, on the brief) for Appellee.
 Joel K. Dranove, New York, NY, for Defendant-Appellant Angel Rodriguez.
 George R. Goltzer, New York, NY, for Defendant-Appellant Faustino Delarosa.
 Amelio P. Marino, Marino & Veneziano, New York, N.Y. for Defendant-Appellant Edgardo Vazquez Baez.
 B. Alan Seidler, New York, N.Y. for Defendant-Appellant Kenneth Rodriguez.
 Before: CALABRESI, POOLER, and PARKER, Circuit Judges.
 POOLER, Circuit Judge.
 Angel Rodriguez ("A.Rodriguez"), Faustino Delarosa ("Delarosa"), Edgardo Vazquez Baez ("Vazquez Baez"), and Kenneth Rodriguez ("K.Rodriguez") appeal from judgments of conviction, entered on October 1, 2003, October 2, 2003, October 20, 2003, and April 16, 2004, respectively, in the United States District Court for the Southern District of New York (Duffy, J.).
 
 
 1
 All four defendants were convicted, after a seven-day jury trial, of conspiracy to commit Hobbs Act robbery in violation of 18 U.S.C. § 1951.[1] On appeal, defendants A. Rodriguez, Delarosa, and Vazquez Baez principally argue that (1) the district court committed Confrontation Clause error by admitting a post arrest statement made by co-defendant K. Rodriguez's against them and (2) this error was not harmless. The government concedes that Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), which was decided subsequent to trial, establishes that the district court committed Confrontation Clause error by admitting K. Rodriguez's statement against his three co-defendants. In Crawford, the Supreme Court held that it is Confrontation Clause error to admit a declarant's prior testimonial statement against a defendant unless the defendant had a prior opportunity to cross-examine the declarant and the declarant is unavailable to testify at defendant's trial. 541 U.S. at 68, 124 S.Ct. 1354. The government also concedes that the harmless error standard applies because A. Rodriguez, Delarosa, and Vazquez Baez preserved their Confrontation Clause arguments below. The government contends, however, that the district court's Crawford error was harmless beyond a reasonable doubt.
 
 
 2
 Angel Rodriguez, Delarosa, and Vazquez Baez also challenge the sufficiency of the evidence against them, claiming that, without K. Rodriguez's statement, there was insufficient evidence to support a Hobbs Act robbery conviction, which requires that the plan involve "actual or threatened force, or violence, or fear of injury," see 18 U.S.C. § 1951(a)-(b),[2] because their plan was to steal by trick (impersonation of DEA agents), rather than by force. In the event that we affirm their convictions, each defendant challenges the district court's sentencing determinations and requests a remand for consideration of whether to resentence pursuant to this Court's decision in United States v. Crosby, 397 F.3d 103 (2d Cir.2005). We address A. Rodriguez, Delarosa, and Vazquez Baez's Crawford harmless error, sufficiency of the evidence, and Crosby arguments here and resolve all of K. Rodriguez's claims on appeal in a summary order issued today.[3]
 
 
 3
 With respect to defendants' Crawford claims, we hold that the district court's erroneous admission of co-defendant K. Rodriguez's statement against A. Rodriguez, Delarosa, and Vazquez Baez was not harmless beyond a reasonable doubt. With respect to defendants' sufficiency of the evidence challenges, we hold that only Vazquez Baez satisfied his burden of proof. Because the proper remedy for the Crawford harmless error violation is a retrial and the proper remedy for a successful sufficiency of the evidence claim is acquittal, (1) A. Rodriguez and Delarosa's Hobbs Act conspiracy convictions are vacated and remanded to the district court for retrials and (2) Vazquez Baez's Hobbs Act conspiracy conviction is reversed and remanded to the district court with instructions to enter a judgment of acquittal. See United States v. Tubol, 191 F.3d 88, 97-98 (2d Cir.1999) (vacating defendant's conviction and remanding for retrial based on harmful error determination and declining to grant acquittal based on adverse finding on defendant's sufficiency of the evidence claim); see also United States v. McClain, 377 F.3d 219, 222 (2d Cir.2004) (suggesting that a new trial is appropriate remedy if Confrontation Clause error was not harmless). Vazquez Baez's illegal reentry conviction is remanded to the district court, pursuant to Crosby, for the limited purpose of providing the district court with an opportunity to consider whether to resentence.
 
 BACKGROUND
 
 I. The May 20, 2002 drug deal
 
 
 4
 Defendants' Hobbs Act robbery convictions were based on events that unfolded on May 20, 2002 ("May 20th"), at the corner of 100th Street and West End Avenue in New York City. As part of an investigation into a Canada-New York drug pipeline, an undercover DEA Agent, Louis Milione, arrived on the scene with a bag full of phony drugs to engage in a "drug deal" with an individual named Alejandro Paulino. Defendants, unaware that Milione was an undercover DEA agent, attempted to take Milione's bag, at least in part, by impersonating DEA agents.
 
 
 5
 Specifically, the following events ensued after Paulino and Milione, with his DEA backup team, arrived on the scene on May 20th. Paulino instructed Milione to remove the bag of drugs from Milione's car and place it in the car occupied by his cousin, Juan Santos, which was parked nearby. Paulino subsequently departed. Approximately at this time, Milione's DEA backup team started monitoring a maroon Jeep Cherokee that had arrived. Angel Rodriguez, Delarosa, Vazquez Baez, and K. Rodriguez were later identified as the occupants of the Jeep Cherokee, which was registered in K. Rodriguez's name. Delarosa exited the Jeep Cherokee, walked over to a phone booth, and made a call on his cell phone. K. Rodriguez also exited the Jeep.
 
 
 6
 While Agent Milione was following Paulino's instruction to retrieve the bag of "drugs," K. Rodriguez and Delarosa quickly approached Milione. As K. Rodriguez was approaching Milione, K. Rodriguez appeared to be talking on a walkie talkie. He also removed from his pocket, and placed around his neck, what appeared to the DEA backup team to be a police badge. Delarosa did not appear to be carrying anything as he approached Milione. Approximately at the same time, the Jeep Cherokee, which was driven by A. Rodriguez, proceeded in the direction of Milione, who subsequently gave a distress signal to his DEA backup team.
 
 
 7
 Initially, the backup team thought defendants were indeed undercover law enforcement officials, in part, because "they were very organized and skilled the way they were handling the situation." The DEA backup team soon realized these individuals were not actually undercover agents and started making arrests. Delarosa was arrested. Police also arrested A. Rodriguez, the driver of the Jeep Cherokee, and Vazquez Baez, who was sitting in the backseat. At the time of these arrests, DEA agents found a knife in A. Rodriguez's pocket and no weapons on Delarosa and Vazquez Baez. K. Rodriguez escaped but later turned himself in and essentially confessed that he made a plan with others to rob the participants in the May 20th drug deal.
 
 
 8
 
 II. The government's case against defendants: Hobbs Act robbery
 
 
 
 9
 Based on the events of May 20th, defendants were charged with, inter alia, conspiracy to commit Hobbs Act robbery in violation of 18 U.S.C. § 1951.[4] In Hobbs Act robbery conspiracy cases, it is the government's burden to establish that defendant knowingly and willingly agreed with two or more individuals to obstruct, delay, or affect interstate commerce,[5] by unlawfully taking property "by means of actual or threatened force, or violence, or fear of injury." 18 U.S.C. §§ 1951(a)-(b). As indicated by the statutory language, a Hobbs Act conspiracy to rob implies the use of force. The government was also required to establish two elements against each defendant: (1) the existence of a conspiracy to rob ("first element"), and (2) knowing participation in that conspiracy ("second element"). See, e.g., United States v. Taylor, 92 F.3d 1313, 1332-33 (2d Cir.1996); see also United States v. Reyes, 302 F.3d 48, 53 (2d Cir.2002) (indicating that existence of conspiracy and knowing participation in conspiracy are separate elements of crime of conspiracy under federal law).
 
 
 A. Evidence at trial
 
 
 1. K. Rodriguez's post-arrest statement
 
 
 10
 According to defendants, one of the most powerful pieces of evidence entered against them was the government's introduction of testimony regarding K. Rodriguez's post-arrest statement. In this statement, K. Rodriguez admitted that there was a conspiracy "to rob" from participants of the May 20th drug deal. Specifically, two DEA agents testified at trial that K. Rodriguez admitted to planning with Paulino's cousin and others to "rip off" the drugs involved in the May 20th sale. A DEA agent further recounted that K. Rodriguez confessed that Paulino's cousin, Juan Santos, told him the following regarding how to proceed at the Milione-Paulino drug deal:
 
 
 11
 And when [the person] who was bringing the drugs to the scene put the drugs in Juan Santos's vehicle . . . Kenneth Rodriguez and others [were supposed] to rob or to take the drugs from Juan Santos's vehicle in front of Paulino, who was brokering the deal in the other car.
 
 
 12
 Trial Tr. at 250 (emphasis added).
 
 
 13
 The district court rejected defendants' Confrontation Clause argument that K. Rodriguez's statement could not be used against them for any purpose. Instead, the district court ensured that none of the defendants' names were mentioned and allowed the government to admit K. Rodriguez's statement solely to establish the first element of the crime-the existence of a conspiracy to rob. Judge Duffy specifically directed the jury not to consider K. Rodriguez's statement as evidence that A. Rodriguez, Delarosa, or Vazquez Baez, participated in a conspiracy to rob-the second element of the crime.
 
 
 14
 
 2. Principal evidence entered against all defendants
 
 
 
 15
 Along with K. Rodriguez's post-arrest statement, the following represents the government's principal evidence against defendants: (1) DEA testimony describing the circumstances recounted above and a videotape that captured some of the events in question; (2) the two knives that DEA agents found inside a console, which was either opened or closed,[6] in the Jeep Cherokee; (3) a knife found in A. Rodriguez's pocket; (4) a hat with two holes cut out of it, stockings, and a walkie talkie found inside the Jeep Cherokee; (5) DEA testimony that defendants were conducting what the agents perceived as "countersurveillance" of the Milione-Paulino May 20th drug deal; (6) evidence indicating that defendants had a high level of coordination as they approached Milione; (7) a high volume of phone calls between defendants in the days leading up to, and the day of, the event in question;[7] (8) evidence that, following the intervention of the DEA backup team, K. Rodriguez fled the scene, Delarosa was apprehended on the street, A. Rodriguez was apprehended while driving the Jeep Cherokee, and Vazquez Baez was found in the back seat of the Jeep Cherokee.
 
 
 16
 
 3. Additional evidence admitted against Delarosa and A. Rodriguez individually
 
 
 
 17
 The government admitted Delarosa's post-arrest statement against him individually.[8] According to Delarosa's post-arrest statement, he was on the street looking for work on May 20th when an acquaintance approached him in the maroon Jeep Cherokee. Delarosa was told, according to the statement, that he would receive work if he got into the Jeep Cherokee. Once the Jeep Cherokee arrived at the scene of the Paulino-Milione drug deal, Delarosa was instructed to exit the Jeep and "to watch the corner of West 100th and West End Avenue." Delarosa admitted to following this instruction but did not admit to knowing the purpose of the trip to the scene.
 
 
 18
 Against A. Rodriguez, the government additionally presented (1) A. Rodriguez's post-arrest statement and (2) knowledge and intent evidence derived from A. Rodriguez's participation in a separate conspiracy. See Federal Rules of Evidence § 404(b) ("Section 404(b)") (providing that, while prior act evidence "is not admissible to prove the character of a person in order to show action in conformity therewith," it may be "admissible for other purposes, such as proof of. . . intent [or] knowledge."). Angel Rodriguez's post-arrest statement communicated, in relevant part, that he made a plan with Paulino's cousin and others to take money by using a "badge."[9]
 
 
 19
 The government's Rule 404(b) evidence against A. Rodriguez consisted of testimony that, on February 2, 2002, officers responded to a dispatch call regarding "a disorderly group" at a building in upper Manhattan. While conducting a floor-by-floor search of the building, a police officer observed A. Rodriguez on the roof of the building. Close to where police observed A. Rodriguez, police found a bag that contained ropes, harnesses, a chisel, and bolt cutters. In a nearby alleyway, police found a "wool ski mask," which the government alleges is similar to the hat with two eye holes that was found in the Jeep Cherokee on May 20th.
 
 
 B. Verdict and sentencing
 
 
 20
 During deliberations, the jury asked the court to repeat the Hobbs Act definition of "robbery" and to further inspect A. Rodriguez's and K. Rodriguez's post-arrest statements. On June 2, 2003, the jury convicted all defendants of conspiring to commit Hobbs Act robbery. Along with the Hobbs Act robbery convictions, the jury convicted Vazquez Baez of illegally reentering the country following deportation.[10] Angel Rodriguez, Delarosa, and Vazquez Baez were acquitted of conspiracy and attempt to distribute and possess cocaine in violation of 21 U.S.C. § 846.[11] The district court denied defendants' post-trial motions for a judgment of acquittal, see Fed.R.Crim.P. 29, and principally sentenced A. Rodriguez to 121 months imprisonment, Delarosa to 51 months imprisonment, and Vazquez Baez to 97 months imprisonment. This appeal ensued.
 
 
 III. Defendants' arguments on appeal
 
 
 21
 On appeal, A. Rodriguez, Delarosa, and Vazquez Baez challenge their Hobbs Act robbery convictions, arguing (1) that they deserve a retrial based on the district court's Crawford error because the admission of K. Rodriguez's statement was not harmless beyond a reasonable doubt and (2) that they should be acquitted of their Hobbs Act robbery convictions because the government failed to present sufficient evidence to sustain their convictions.
 
 
 22
 Once we remove K. Rodriguez's post-arrest statement from the corpus of evidence, defendants contend, the government cannot prove that a conspiracy to rob existed (first element) or that any of them participated in such a conspiracy (second element). The principal argument underlying defendants' claims on the first element is that K. Rodriguez's statement was the only indication that the conspiracy involved an intent to take drugs "by force," as is required in Hobbs Act robbery cases. The flashing of a badge, in defendants' view, is not sufficient to indicate that they intended to take property through "actual or threatened force, or violence, or fear of injury" within the meaning of the Hobbs Act. See 18 U.S.C. § 1951(b)(1) ("Hobbs Act force"). With respect to the second element, each defendant contends that there was insufficient evidence indicating that each of them knowingly participated in the alleged conspiracy.
 
 DISCUSSION
 
 I. Crawford harmless error analysis
 
 
 23
 We apply harmless error review to the district court's Crawford error because, as the government concedes, defendants preserved their Confrontation Clause claim below. To establish that the error was harmless, the government must establish "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." See McClain, 377 F.3d at 222 (quoting United States v. Casamento, 887 F.2d 1141, 1179 (2d Cir.1989)); see also Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).
 
 
 24
 Our Crawford harmless error analysis relates only to the government's evidence of the first element-the existence of a conspiracy to rob. The Crawford inquiry only involves this first element because, as mentioned above, the district court instructed the jury to consider K. Rodriguez's post-arrest statement for the sole purpose of establishing the existence of a conspiracy to rob. We presume that the jury followed the instruction not to consider K. Rodriguez's post-arrest statement when considering whether the government established the second element — that A. Rodriguez, Delarosa, and Vazquez Baez, participated in the conspiracy. See McClain, 377 F.3d at 223. There are no circumstances in this case that counsel us to deviate from this presumption. See United States v. Downing, 297 F.3d 52, 59 (2d Cir.2002) ("Absent evidence to the contrary, we must presume that juries understand and abide by a district court's limiting instructions.").
 
 
 25
 
 A. First element: Existence of conspiracy to rob
 
 
 
 26
 Applying the harmless error standard, we conclude that the government has failed to establish, beyond a reasonable doubt, that the error complained of — the erroneous admission of K. Rodriguez's statement against his co-defendants — did not contribute to the jury's determination that a conspiracy to take property through "actual or threatened force, or violence, or fear of injury" existed. See 18 U.S.C. §§ 1951(a)-(b).
 
 
 1. Vazquez Baez
 
 
 27
 Against Vazquez Baez, the government entered only its principal evidence. See Background IIA(2) supra. Viewing the government's principal evidence, reasonable jurors could have determined that there was a reasonable doubt with respect to whether the plan involved Hobbs Act force because (1) defendants seemed to have solely relied on their impersonation of DEA agents as their means to acquire the property; (2) two of the knives may have been concealed in a closed console; (3) A. Rodriguez was the only person found possessing a knife, which was found in his pocket; and (4) K. Rodriguez and Delarosa, the two most active participants, were not armed as they approached Milione. Moreover, Vazquez Baez was sitting, unarmed, in the back of the Jeep Cherokee throughout the events described. Thus, reasonable jurors, who had not considered K. Rodriguez's statement that there was a conspiracy to rob, may have found that the "the essential nature of the plan" did not involve force, a threat of force, or fear of injury. See generally United States v. Skowronski, 968 F.2d 242, 247 (2d Cir.1992) (ruling that while "coconspirators need not have agreed on the details of the conspiracy" they must have agreed on "the essential nature of the plan"), abrogated on other grounds by United States v. Amato, 46 F.3d 1255 (2d Cir.1995).
 
 
 28
 The government argues that the use of a police badge is sufficient to establish that the plan involved Hobbs Act force. We disagree. As an initial matter, we acknowledge that Hobbs Act force does not require the brandishing of a weapon. In the context of Hobbs Act extortion, which requires inducement of another's property, "by wrongful use of actual or threatened force, violence, or fear, or under color of official right" (the force element), 18 U.S.C. § 1951(b)(2), this Court has indicated that the use of a weapon is not a prerequisite for a finding of force. Cf. United States v. Abelis, 146 F.3d 73, 83 (2d Cir.1998). In Abelis we held that a jury could find force where defendants wrongfully and intentionally used an individual's reputation "as a prominent figure in the Russian criminal underworld alone" to instill fear. Id. at 82.[12]
 
 
 29
 When we are examining whether there is Hobbs Act force in a factual context that does not involve the use of a weapon, it is especially important for us to carefully consider (1) how a reasonable person in the victim's position would perceive an action (i.e. the flashing of a badge); (2) the perpetrators' knowledge that a victim would perceive such action to be part of a pattern of violence, intimidation, or threats; and (3) the perpetrators' intention to "exploit their victim's fears." See United States v. Arena, 180 F.3d 380, 396 (2d Cir.1999).[13] In the case sub judice, the relevant "perpetrators" were disguised as DEA agents and, based on what they knew at the time, the "victim" was an individual engaged in a high stakes drug deal. As defense counsel aptly stated at oral argument, in this case, "the cops were criminals and the criminals were cops."
 
 
 30
 Once a police badge is displayed, a reasonable person would perceive the badge to indicate that "the jig was up," rather than to immediately indicate an imminent threat of force.[14] Of course, if the "victim" decided to resist arrest, the badge holder might conceivably take additional action that communicates a threat of force. However, when viewing the immediate response to the flashing of the badge alone, which is what we are asked to do in this case, we do not find Hobbs Act force. Moreover, the fact that the two individuals who approached Milione were unarmed indicates that defendants expected that the badge alone would allow them to take the property unimpeded, thereby obviating the need to use force.
 
 
 2. Delarosa and A. Rodriguez
 
 
 31
 The only additional evidence that was presented against Delarosa individually was his post-arrest statement that he was solely an innocent bystander. See Background IIA(3) supra. Even with this additional piece of evidence, the merits of Delarosa's Crawford argument are much the same as they were for Vazquez Baez. Delarosa's post-arrest statement does not mention weapons of any kind or otherwise provide any additional indication that there was a plan to use force, as defined by the Hobbs Act. See 18 U.S.C. § 1951(b)(1).
 
 
 32
 Angel Rodriguez's post-arrest statement and the knowledge and intent evidence admitted against him are also not sufficient to render the Crawford error harmless. Neither indicate that the conspiracy involved Hobbs Act force. Angel Rodriguez's post-arrest statement communicated, in relevant part, that he made a plan with Paulino's cousin and others to take money. It also went on to say that someone was "going to jump in with the badge and he's going to say that he's arrested." While this statement clearly indicates that A. Rodriguez made an agreement with others to use a badge in order to take money from someone else, this statement does not provide us with any additional indication that there was a plan to use Hobbs Act force. In light of our determination that the use of a badge alone does not constitute Hobbs Act force, it is reasonable to conclude that A. Rodriguez's admission that the plan was to take property through the use of a badge actually bolsters his claim that he was not part of a plan that involved taking property by "force."
 
 
 33
 Furthermore, a reasonable jury could have viewed the Rule 404(b) evidence regarding A. Rodriguez's involvement in a similar conspiracy only to suggest that A. Rodriguez's knowledge and intent was to illegally take something. While the use of ropes, harnesses, a chisel, and bolt cutters strongly indicates that A. Rodriguez was intentionally part of a separate conspiracy with an intent to burglarize, it is not relevant to show that he had the intent to use Hobbs Act force during the events under review.
 
 
 34
 In sum, we conclude that, without K. Rodriguez's critical statement that a conspiracy to rob the Paulino-Milione drug deal existed, it is not shown beyond a reasonable doubt, with respect to all three defendants, that the government could demonstrate that a Hobbs Act conspiracy to rob existed. See generally United States v. Forrester, 60 F.3d 52, 64-65 (2d Cir.1995) ("Error going to the heart of a critical issue is less likely to be harmless.") (internal quotation marks and citation omitted). Therefore, each of these three defendants has, at least, established that they are entitled to a retrial. We next examine their sufficiency of the evidence claims to decide if any of these three defendants have further earned entitlement to outright reversal of their Hobbs Act convictions.
 
 
 II. Sufficiency of the evidence review
 
 
 35
 Our review of defendants' sufficiency of the evidence claims is stricter than our harmless error review of the Crawford error. Discussion I supra. Our cases have repeatedly affirmed that defendants who challenge their convictions on sufficiency grounds carry a "heavy burden." United States v. Bruno, 383 F.3d 65, 82 (2d Cir.2004) (quoting United States v. Dhinsa, 243 F.3d 635, 648-49 (2d Cir.2001)). We will not vacate a conviction on sufficiency of the evidence grounds if, drawing all inferences in favor of the prosecution and viewing the evidence in the light most favorable to the prosecution, "`any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" United States v. Padilla, 961 F.2d 322, 324 (2d Cir.1992) (quoting Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).
 
 
 36
 Additionally, in contrast to our Crawford harmless error review analysis, which focused solely on the first element necessary to sustain a Hobbs Act robbery conviction, our sufficiency of the evidence inquiry demands that we analyze the evidence with respect to both the existence of a conspiracy and participation elements. This is the case because the sufficiency of the evidence claim challenges the underlying conviction as a whole, see. e.g., United States v. Gaines, 295 F.3d 293, 299 (2d Cir.2002), and therefore involves both elements necessary for a Hobbs Act conspiracy to rob conviction.
 
 
 37
 
 A. First element: Existence of conspiracy to rob
 
 
 
 38
 Once we view all of the circumstantial evidence and draw every inference in favor of the government, we conclude that a reasonable juror could have found beyond a reasonable doubt, with respect to all three defendants, that a conspiracy, hinging in some way on the use of Hobbs Act force, existed. For instance, a reasonable juror could have concluded, based on the totality of the circumstantial evidence, that there was a backup plan to steal the drugs at knife-point. There is no question that the use of a knife is sufficient to establish Hobbs Act force. See, e.g. United States v. Woodruff, 296 F.3d 1041, 1047 (11th Cir.2002) (describing a knife as one of several kinds of weapons "designed to harm or threaten bodily injury"). It is undisputed that three knives were found at the scene. The Jeep's driver, A. Rodriguez, possessed a knife and had easy access to the two additional knives found in the Jeep's console. If defendants' plan to steal through impersonation was foiled in some way, a rational trier of fact could infer that A. Rodriguez was poised to intervene with his knife. It is reasonable to infer that K. Rodriguez, the owner of the Jeep, was also aware that knives were available and could be used if necessary. This circumstantial evidence, along with defendants' high level of coordination and communication, is sufficient to permit a reasonable inference that defendants had a tacit plan to use force.
 
 
 39
 This Court has acknowledged that jurors are permitted to infer, based on circumstantial evidence alone, that two or more of the defendants had a tacit understanding to use force or a threat of force. See Skowronski, 968 F.2d at 248; see also United States v. Glenn, 312 F.3d 58, 70 (2d Cir.2002) (stating that a conviction can rest solely on circumstantial evidence). In Skowronski, an employee of a jewelry store was convicted of conspiracy to rob the jewelry store. On appeal, the employee made a sufficiency of the evidence challenge to his conviction, arguing that, because the plan was for him to voluntarily allow the robbers to take the property, there was no "force" for purposes of a Hobbs Act extortion charge. Skowronski, 968 F.2d at 248.
 
 
 40
 The Skowronski court held that a reasonable juror could have found, beyond a reasonable doubt, that defendants were aware that their plan could inevitably lead to a threat of force. Id. Specifically, the circumstantial evidence indicated that defendants knew that security guards would be present at the store at the time of the theft and therefore "[t]he complicity of Skowronski . . . did not mean that there would be no need for the use or threat of force against others." Id. Based on the fact that defendants were aware of the presence of security guards, a reasonable juror could infer that defendants knew that the theft of the jewelry store would require some element of force, as defined by the Hobbs Act. Id.
 
 
 41
 Similar to Skowronski, the circumstantial evidence in this case, especially the presence of several knives, permits an inference that defendants had a tacit agreement to use Hobbs Act force and, therefore, none of the defendants have met the significant burden of showing that no reasonable juror could have found that a conspiracy to rob existed.[15] In sum, once we view the trial evidence "in the light most favorable" to the government, and adopt "every inference" that the jury might draw in favor of the government, we hold that all of defendants' sufficiency arguments fail with respect to the existence of a conspiracy element.
 
 
 42
 
 1. Second element: Defendants' participation in the conspiracy to rob
 
 
 
 43
 With respect to the second element, only Vazquez Baez meets his burden of proving that the government failed to present sufficient evidence of his knowing participation in the conspiracy to rob. Therefore, only Vazquez Baez's sufficiency of the evidence claim ultimately prevails, meriting an outright reversal of his Hobbs Act robbery conviction.
 
 
 44
 
 a. Vazquez Baez
 
 
 
 45
 The government's principal evidence, even when viewed in the light most favorable to the government, only establishes Vazquez Baez's "mere presence" at the scene. It does not establish that Vazquez Baez knowingly participated in the conspiracy to rob. The government argues that the jury could reasonably infer Vazquez Baez's participation in the conspiracy to rob from Vazquez Baez's presence in the Jeep along with telephone records, which indicated close contact between Vazquez Baez and his co-defendants. In the government's view, Vazquez Baez's presence in the Jeep Cherokee indicates that he knowingly participated in the conspiracy because it is unreasonable to conclude that co-defendants would involve an innocent bystander. The government's argument fails.
 
 
 46
 This Court has "repeatedly emphasized" that a defendant's "mere presence" at a crime scene or "association with conspirators" does not establish "intentional participation in the conspiracy, even if the defendant has knowledge of the conspiracy." United States v. Samaria, 239 F.3d 228, 235 (2d Cir.2001); see also United States v. Jones, 393 F.3d 107, 111 (2d Cir.2004). While Vazquez Baez's presence in the back of the Jeep Cherokee and the telephone records presented at trial show that Vazquez Baez was present at the scene and had an "association with conspirators," it does not demonstrate that he knowingly participated in the conspiracy to rob. See Samaria, 239 F.3d at 235; Jones, 393 F.3d at 111. Even though a conviction can rely on circumstantial evidence, "suspicious circumstances" are not enough to sustain a conviction. See Jones, 393 F.3d at 111. The government simply did not submit any evidence indicating anything beyond "suspicious circumstances" with respect to Vazquez Baez.
 
 
 47
 Because Vazquez Baez ultimately prevails on his sufficiency of the evidence claim, his conviction for Hobbs Act robbery is reversed and remanded to the district court with instructions to enter a judgment of acquittal. Vazquez Baez's conviction for illegal re-entry is remanded for consideration of whether to resentence pursuant to Crosby.
 
 
 48
 
 b. Delarosa and A. Rodriguez
 
 
 
 49
 Unlike Vazquez Baez, Delarosa's sufficiency of the evidence challenge fails on the second element. Given the circumstances surrounding Delarosa during the May 20th Paulino-Milione drug deal, a reasonable juror could have found that Delarosa knowingly participated in the conspiracy. Unlike Vazquez Baez, Delarosa was not "merely present" at the scene of the crime. Moreover, the evidence indicated that Delarosa was more than merely a "lookout." See Samaria, 239 F.3d at 237-38 ("In conspiracy cases in which defendants acted as lookouts, we have upheld convictions only when other indicia of the elements of the underlying substantive offense have been in evidence."). Delarosa exited the Jeep, walked over to the phone booth, made a cell phone call, and then walked swiftly toward Milione. According to DEA testimony, Delarosa's movements appeared to have been highly coordinated with his co-defendants. This observation runs counter to Delarosa's post-arrest statement that he was an innocent bystander who was not aware of the nature of the plan. Based on these circumstances, Delarosa has not overcome his "heavy burden"; a reasonable juror could have found beyond a reasonable doubt that Delarosa knowingly participated in the conspiracy. See United States v. Walsh, 194 F.3d 37, 51 (2d Cir.1999).
 
 
 50
 Angel Rodriguez's sufficiency of the evidence challenge also fails on the second element because a reasonable juror could have found that he knowingly participated in the conspiracy. Although A. Rodriguez was not one of the two individuals who walked toward Milione at the scene, a reasonable juror could have found that A. Rodriguez, who was driving the Jeep Cherokee, was not "merely present." Once K. Rodriguez and Delarosa approached Milione, A. Rodriguez drove the Jeep in the direction of Milione. A juror could reasonably infer that this action was done in coordination with his co-defendants. Drawing all inferences in favor of the government, his post-arrest statement provided further evidence of A. Rodriguez's knowing participation in the robbery conspiracy.
 
 
 51
 Because Delarosa and A. Rodriguez prevailed on their Crawford claims but not on their sufficiency of the evidence claims, we vacate and remand for a retrial. Because there will be a retrial, we find no reason to adjudicate their sentencing challenges at this time.
 
 CONCLUSION
 
 52
 Based on the foregoing we (1) reverse Vazquez Baez's Hobbs Act robbery conviction and grant a Crosby remand with respect to his illegal reentry conviction; (2) vacate Delarosa's Hobbs Act robbery conviction and remand for a retrial; and (3) vacate A. Rodriguez's Hobbs Act robbery conviction and remand for a retrial.
 
 
 
 Notes:
 
 
 [1]
 Baez was also convicted, pursuant to 8 U.S.C. § 1326(a)(2), (b)(2), of illegal re-entry into the United States following his removal for an aggravated felony conviction. K. Rodriguez was convicted of several additional counts relating to two indictments, which we discuss in a summary order filed today
 
 
 [2]
 The full definition of Hobbs Act robbery is:
 [T]he unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.
 18 U.S.C. § 1951(b)(1).
 
 
 [3]
 The summary order affirms all of K. Rodriguez's convictions, dismisses his claim that the district court misapprehended its authority to downwardly depart, and grants him aCrosby remand. We do not decide K. Rodriguez's ineffective assistance of counsel claim without prejudice to its resolution pursuant to a 28 U.S.C. § 2255 proceeding.
 
 
 [4]
 The indictment also charged these three defendants with conspiracy and attempt to distribute and possess cocaine in violation of 21 U.S.C. § 846
 
 
 [5]
 In this case, which involves a Canada-New York drug transaction, the interstate commerce requirement is not a disputed issueSee United States v. Fabian, 312 F.3d 550, 555 (2d Cir.2002) ("We previously held that both drug dealing and loansharking, while illegal, have an effect on interstate commerce").
 
 
 [6]
 While a DEA agent testified that he remembered that the knives were found in the console of the Jeep Cherokee, he could not recall whether the console was open or closed
 
 
 [7]
 The government submitted, for instance, records indicating that there were almost 400 calls between defendants' cell phones during the first nineteen days of May
 
 
 [8]
 Delarosa made a pre-trial motion to suppress this statement, which was denied by the district court. On appeal, Delarosa does not challenge this determination
 
 
 [9]
 Angel Rodriguez argues on appeal that the district court erred in denying his motion to suppress his confession. We disagree. A. Rodriguez argued at his suppression hearing that he was physically assaulted by police officers and was coerced into giving a statement without receiving aMiranda warning, see Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Judge Duffy rejected these claims, referring to them as a "tissue of lies." Based on our review of the record, we conclude that the district court's factual findings with respect to the voluntariness of A. Rodriguez's statement and the adequacy of the Miranda warnings were not clearly erroneous. See United States v. Khalil, 214 F.3d 111, 122 (2d Cir.2000) (holding that the district court's credibility assessments are entitled to deference and reviewed for clear error).
 
 
 [10]
 Vazquez Baez does not challenge his re-entry conviction on appeal but requests aCrosby remand.
 
 
 [11]
 Because A. Rodriguez, Delarosa, and Vazquez Baez were acquitted of the drug charges, we do not discuss them here
 
 
 [12]
 Even though the Hobbs Act extortion definition refers to "fear" and the Hobbs Act robbery definition refers to "fear of injury," theAbelis Court's determination that a reputation alone could be sufficient, can be applied to the Hobbs Act robbery context as long as the reputation is knowingly used to instill a "fear of injury." Compare 18 U.S.C. § 1951(b)(1) with 18 U.S.C. § 1951(b)(2).
 
 
 [13]
 While theArena Court was faced with the meaning of "threatened force, violence, or fear," 18 U.S.C. § 1951(b)(2), in the context of a Hobbs Act extortion conviction, we find no reason not to adopt this determination in the context of a Hobbs Act robbery.
 
 
 [14]
 Because neither of the defendants who approached Agent Milione brandished a dangerous weapon, it is unnecessary for us to decide whether a badge, accompanied by a visible dangerous weapon, would be perceived as a threat of force
 
 
 [15]
 In fact, Delarosa's attorney conceded that the government had sufficient evidence of the first element, stating at trial that, "in a light viewed most favorably to the government, a reasonable inference could . . . be drawn [that] there was an agreement to use force." Because we would find against Delarosa on this point regardless of this statement, we do not need to address whether or not this statement constituted a waiver