14-3872-cr
*United States v. Hill*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term 2015

(Argued: November 12, 2015          Decided: August 3, 2016)

No. 14-3872-cr

_____

UNITED STATES OF AMERICA,

*Appellee,*

-v.-

ELVIN HILL, A/K/A ELTON,

*Defendant-Appellant.*

_____

Before:      JACOBS, LIVINGSTON, and DRONEY, *Circuit Judges.*

Defendant-appellant Elvin Hill appeals from his judgment of conviction, dated October 3, 2014, in the United States District Court for the Eastern District of New York (Matsumoto, *J.*).  Hill was convicted of violating 18 U.S.C. § 924(j)(1), for a firearm-related murder committed in the course of a crime of violence pursuant to 18 U.S.C. § 924(c), in this case, Hobbs Act robbery, as defined in 18 U.S.C. § 1951(b)(1).  A summary order issued concurrently with this opinion addresses and rejects most of Hill's claims on appeal.   This opinion considers one of Hill's challenges to his conviction: whether Hobbs Act robbery qualifies as a "crime of violence" under 18 U.S.C. § 924(c)(3).  We hold that it

1

does.  First, we find that Hobbs Act robbery is categorically a "crime of violence" under the "force clause" of this statute, § 924(c)(3)(A).  Second, we reject Hill's argument that the Supreme Court in *Johnson v. United States*, 135 S. Ct. 2551 (2015), effectively rendered the "risk-of-force clause," § 924(c)(3)(B), void for vagueness.  Accordingly, the judgment of conviction is **AFFIRMED**.

FOR APPELLEE:                     DANIEL S. SILVER, Amy Busa, Seth D. DuCharme, Assistant United States Attorneys, New York, N.Y., *for* Robert L. Capers, United States Attorney for the Eastern District of New York, *for the United States of America.*

FOR DEFENDANT-APPELLANT:          YUANCHUNG LEE, Federal Defenders of New York, New York, N.Y., *for Elvin Hill.*

DEBRA ANN LIVINGSTON, *Circuit Judge*:

In 1997, Fredy Cuenca, a livery cab driver, was robbed, shot, and killed after picking up a fare in the middle of the day in Brooklyn.  Almost 14 years later, Rhan Powell admitted he was one of the two passengers who robbed Cuenca.  He also attested that Elvin Hill was the second passenger — the one who carried the weapon and pulled the trigger.  The Government filed an indictment, charging Hill with violating 18 U.S.C. § 924(j)(1) for committing a firearm-related murder in the course of a "crime of violence," as defined in 18 U.S.C. § 924(c)(3).  In this case, the crime of violence was Hobbs Act robbery, as

2

defined in 18 U.S.C. § 1951(b)(1). Hill pleaded not guilty, proceeded to trial, and was convicted of the charged offense.

This case raises the question whether Hobbs Act robbery is a "crime of violence" within the meaning of 18 U.S.C. § 924(c)(3).[1] Hill argues that Hobbs Act robbery does not qualify categorically as a crime of violence under the statute's "force clause," § 924(c)(3)(A), because it can be committed without physical force or the threatened deployment of the same. He also contends that Hobbs Act robbery cannot qualify as a crime of violence under the "risk-of-force clause," § 924(c)(3)(B), because the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (*Johnson II*) (2015), effectively rendered that clause unconstitutionally vague.

We reject both arguments and hold that Hobbs Act robbery is a crime of violence under 18 U.S.C. § 924(c)(3). Accordingly, we affirm the district court's judgment of conviction.

---

[1] Hill brings a number of additional claims on appeal, which we address in a summary order concurrently issued today.

# BACKGROUND[2]

Fredy Cuenca was a livery cab driver in New York City. One afternoon, on June 29, 1997, he received a call from his dispatcher requesting a pickup in the Bushwick neighborhood of Brooklyn. Two young men, Elvin Hill and Rhan Powell, entered Cuenca's cab. According to Powell, as they were reaching the destination, Cuenca quoted the fare price, $10, which was higher than Hill and Powell had anticipated. Powell suggested to Hill that they rob Cuenca. When Cuenca stopped the cab, Hill yelled out, "[g]ive me the fucking money." Joint App'x 295. Cuenca handed some money he had in his hand to Powell. As Powell was exiting the vehicle, Cuenca began to plead for his life in broken English, pointing to a photograph of his children on the dashboard. Outside the vehicle, Powell then heard a loud sound and saw "red on the windshield." *Id.* at 296. Hill had shot Cuenca — once, in the head — with a previously concealed handgun. Hill and Powell fled the scene. Cuenca died.

Several witnesses heard the fatal gunshot and saw two young men exiting the cab and fleeing the scene. One witness identified Hill as one of the

---

[2] The factual background presented here is derived from the testimony and evidence presented at Hill's trial.

4

assailants during a lineup conducted about two months after the crime.[3] But

Hill was not charged with the crime at that time. Rather, the indictment came

nearly 15 years later.

On April 26, 2011, Powell testified before a grand jury in the Eastern

District of New York and admitted that he was one of the two passengers

involved in the 1997 robbery. He testified that Hill was the one who had killed

Cuenca. On March 22, 2012, another federal grand jury, relying in part on

Powell's 2011 testimony, returned an indictment against Hill. Therein, Hill was

charged with violating 18 U.S.C. § 924(j)(1), for committing a firearms-related

murder in the course of a "crime of violence," as defined in 18 U.S.C. § 924(c)(3).

The alleged predicate crime of violence was Hobbs Act robbery, as defined in 18

U.S.C. § 1951(b)(1).

Hill pleaded not guilty and proceeded to trial in the United States District

Court for the Eastern District of New York (Matsumoto, *J.*). On January 24,

2014, the jury returned a guilty verdict. The district court sentenced Hill to 43

---

[3] Hill challenges the identification evidence from the lineup, a challenge we determine to be without merit in the summary order published today.

years' imprisonment and entered a judgment of conviction dated October 3, 2014. This appeal followed.

## DISCUSSION

This opinion addresses one of Hill's claims on appeal: whether Hobbs Act robbery is a "crime of violence" within the meaning of 18 U.S.C. § 924(c)(3). Hill argues that Hobbs Act robbery does not qualify as a crime of violence on two grounds. First, he claims that Hobbs Act robbery fails to categorically constitute a crime of violence under the statute's "force clause," § 924(c)(3)(A). Second, he argues that the "risk-of-force clause," § 924(c)(3)(B), should be deemed void for vagueness under the Supreme Court's decision in *Johnson II*. We reject both contentions.

## I

We begin with the interlocking statutory provisions involved in this appeal. Hill was indicted and convicted under 18 U.S.C. § 924(j)(1). This provision specifies as follows:

> A person who, in the course of a violation of subsection (c), causes the death of a person through the use of a firearm, shall[,] . . . if the killing is a murder (as defined in section 1111), be punished by death or by imprisonment for any term of years or for life . . . .

6

Section 924(c)(1)(A) in turn explains that "any person who, during and in relation to any crime of violence . . . , uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm" violates subsection (c). Critically, subsection (c) defines the term "crime of violence" as "an offense that is a felony" and

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3). We refer to § 924(c)(3)(A) as the "force clause" and § 924(c)(3)(B) as the "risk-of-force clause."[4]

The "crime of violence" alleged in Hill's indictment was Hobbs Act robbery, in violation of 18 U.S.C. § 1951. Section 1951(a) penalizes a person who "in any way or degree obstructs, delays, or affects commerce . . . by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do

---

[4] The parties' briefs refer to § 924(c)(3)(B) as the "residual clause." We think the shorthand "risk-of-force clause" is clearer and thus adopt that terminology.

anything in violation of this section."  And § 1951(b)(1) defines "robbery" to

mean

> the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.

Taking these statutes together, the jury found that Hill used a firearm to

commit a Hobbs Act robbery — pursuant to the Government's theory, a "crime

of violence" under the firearm statute — and, in the course of that robbery, he

murdered Cuenca in violation of § 924(j)(1).

**II**

**A**

We first consider Hill's claim that Hobbs Act robbery categorically fails to

constitute a crime of violence under the force clause.  To determine whether an

offense is a crime of violence, courts employ what has come to be known as the

"categorical approach."  *Taylor v. United States*, 495 U.S. 575, 600 (1990); *see also*

*Mathis v. United States*, 136 S. Ct. 2243, 2248-49 (2016) (outlining the categorical

approach); *Descamps v. United States*, 133 S. Ct. 2276, 2281 (2013) (same); *United*

*States v. Acosta*, 470 F.3d 132, 135 (2d Cir. 2006) (per curiam) (applying the

8

categorical approach to determine whether a predicate crime was a "crime of violence" under § 924(c)).  We have explained that the categorical approach is "'not only consistent with both precedent and sound policy' but[] also . . . 'necessary in view of the language of the applicable statutes.'"  *Vargas-Sarmiento v. U.S. Dep't of Justice*, 448 F.3d 159, 167 (2d Cir. 2006) (quoting *Jobson v. Ashcroft*, 326 F.3d 367, 372 (2d Cir. 2003)).  The categorical approach guides our analysis here.[5]

Under the categorical approach, courts identify "the minimum criminal conduct necessary for conviction under a particular statute."  *Acosta*, 470 F.3d at 135.  In doing so, courts "'look only to the statutory definitions' — *i.e.*, the elements — of [the] . . . offense[], and *not* 'to the particular [underlying] facts.'"

---

[5] Hill does not contest that the Hobbs Act is a divisible statute, and that Hill was charged with Hobbs Act *robbery* (as opposed to, say, Hobbs Act extortion).  A divisible statute "sets out one or more elements of the offense in the alternative."  *Descamps*, 133 S. Ct. at 2281; *see also Vargas-Sarmiento*, 448 F.3d at 167 (explaining how to identify divisible penal statutes).  If some but not all of the alternative elements would amount to a crime of violence, a court can "modify" the categorical approach by looking at a limited set of documents, including the indictment, to consider under which portion of the statute the defendant was charged.  *See Descamps*, 133 S. Ct. at 2284-85.  After determining which portion was at issue, a court then applies the categorical approach to that part of the challenged statute.  *Id.*  Hill agrees that the Hobbs Act is divisible, but argues that Hobbs Act *robbery* is not, and the Government does not contest this assertion.  *See* Hill Supp. Br. 23 n.9.  *See generally* Gov't Supp. Br. 6-16 (relying on the categorical, rather than the modified categorical, approach).  To that end, we express no view regarding whether Hobbs Act robbery is itself divisible, and we apply the standard categorical approach to the entire offense as defined in the statute.

*Descamps*, 133 S. Ct. at 2283 (quoting *Taylor*, 495 U.S. at 600); *see also Acosta*, 470 F.3d at 135 ("[W]e focus on the intrinsic nature of the offense rather than on the circumstances of the particular crime."). The reviewing court "cannot go behind the offense as it was charged to reach [its] own determination as to whether the underlying facts" qualify the offense as, in this case, a crime of violence. *Ming Lam Sui v. INS*, 250 F.3d 105, 117-18 (2d Cir. 2001) (quoting *Lewis v. INS*, 194 F.3d 539, 543 (4th Cir. 1999)). As relevant here, the categorical approach requires us to consider the minimum conduct necessary for a conviction of the predicate offense (in this case, a Hobbs Act robbery), and then to consider whether such conduct amounts to a crime of violence under § 924(c)(3)(A).

One final point remains. Critically, the Supreme Court has made clear in employing the categorical approach that to show a predicate conviction is not a crime of violence "requires more than the application of legal imagination to [the] . . . statute's language." *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007). As relevant here, there must be "a realistic probability, not a theoretical possibility," that the statute at issue could be applied to conduct that does not constitute a crime of violence. *Id.* To show that a particular reading of the

10

statute is realistic, a defendant "must at least point to his own case or other cases in which the . . . courts in fact did apply the statute in the . . . manner for which he argues." *Id.* To that end, the categorical approach must be grounded in reality, logic, and precedent, not flights of fancy. *See Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684-85 (2013) (noting that "focus on the minimum conduct criminalized by the [relevant] statute is not an invitation to apply 'legal imagination' to the . . . offense" (quoting *Duenas-Alvarez*, 549 U.S. at 193)).

**B**

The question whether Hobbs Act robbery constitutes a crime of violence under the force clause is a matter of first impression in our Circuit.[6] We have, however, previously stated that conspiracy to commit Hobbs Act robbery is a crime of violence under the Bail Reform Act (which employs the same definition

---

[6] The Ninth Circuit recently reiterated its conclusion that Hobbs Act robbery satisfies the force clause. *See United States v. Howard*, No. 15-10042, 2016 WL 2961978 (9th Cir. May 23, 2016, amended Jun. 24, 2016) (mem.) (concluding that Hobbs Act robbery is a "crime of violence" under 18 U.S.C. § 924(c)(3)(A) and disagreeing with the defendant's argument that the "fear of injury" language requires an alternative conclusion); *United States v. Mendez*, 992 F.2d 1488, 1491 (9th Cir. 1993) (observing that a substantive Hobbs Act robbery offense "indisputably qualifies as a crime of violence," a conclusion from which the court derived its holding that conspiracy to commit such an offense categorically creates a "substantial risk that physical force may be used"); *see also United States v. Farmer*, 73 F.3d 836, 842 (8th Cir. 1996) (concluding that Hobbs Act robbery "has as an element the use, attempted use, or threatened use of physical force against the person of another" such that it qualifies as a "serious violent felony" under 18 U.S.C. § 3559(c)).

11

of the term as in § 924(c)(3)) because one of the elements of the offense "is actual or threatened use of force" and "if the element of violence is not present, no conviction under section 1951 can occur." *United States v. DiSomma*, 951 F.2d 494, 496 (2d Cir. 1991) (citing 18 U.S.C. § 1951(b)(1)); *see also United States v. Santos*, 449 F.3d 93, 99 (2d Cir. 2005) (noting that conspiracy to commit Hobbs Act robbery requires an intent to take personal property "by force"); *cf. VAM Check Cashing Corp. v. Fed. Ins. Co.*, 699 F.3d 727, 730 n.2 (2d Cir. 2012) (suggesting that the definition of robbery in 18 U.S.C. § 1951 "limit[s] the crime to larcenies committed by force or threat of force").

As stated above, the term "robbery" in the Hobbs Act is defined, in relevant part, as "the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property." 18 U.S.C. § 1951(b)(1). Hill does not dispute that at least two of the ways in which a Hobbs Act robbery may be accomplished (by means of "actual or threatened force" or "violence") would appear, self-evidently, to satisfy § 924(c)'s force clause (defining a crime of violence as any felony that "has as an element the use, attempted use, or threatened use of physical force against

12

the person or property of another").  He focuses instead on those Hobbs Act robberies accomplished by means of putting the victim in "fear of injury" to his person or property, arguing that such robberies can be accomplished *without* the "use, attempted use, or threatened use of physical force" so that the minimum conduct necessary to commit a Hobbs Act robbery does not include the element necessary to qualify such robberies as crimes of violence for the purpose of § 924(c)(3)(A).  Hill primarily advances two arguments to support this contention.  We disagree with both.

Hill first contends that a perpetrator could rob a victim by putting him in fear of injury to his property through non-forceful means.  He offers hypotheticals such as threatening to throw paint on the victim's house, to spray paint his car, or, most colorfully, to "pour[ ] chocolate syrup on his passport." Hill Supp. Br. 29.  Hill argues that *Johnson v. United States*, 559 U.S. 133 (*Johnson I*) (2010), made clear that the physical force that must be used, attempted, or threatened to satisfy statutory language such as that in § 924(c)(3)(A) must be "violent," "great," or "strong."[7]  On that basis, Hill

---

[7] *Johnson I* construed the meaning of physical force for purposes of 18 U.S.C. § 924(e)(2)(B)(i) which, in relevant part, defines a violent felony for purposes of the Armed Career Criminal Act ("ACCA") as a crime that "has as an element the use,

13

argues that, assuming his hypothetical acts would indeed be sufficient to put a victim in "fear of injury" to his property so that a Hobbs Act robbery might be accomplished (a proposition that is hardly obvious as a practical and precedential matter), the force employed in these hypothetical cases would be insufficient to satisfy the standard in *Johnson I*.[8]   We disagree.

---

attempted use, or threatened use of physical force against the person of another."   This provision thus employs language identical to that used in § 924(c)(3)(A), except for the fact that "crime of violence" is defined in the latter to include crimes having as an element the actual, attempted, or threatened use of physical force "against the person *or property* of another."   § 924(c)(3)(A) (emphasis added).

[8] Hill also suggests, along these same lines, that a perpetrator could successfully commit Hobbs Act robbery by putting a victim in fear of economic injury to an intangible asset without the use of physical force.   Hill relies almost exclusively on hypotheticals, not actual cases, to suggest that there is a realistic possibility that Hobbs Act robbery could extend to such a fact pattern.   He does cite a Fourth Circuit case, *United States v. Iozzi*, 420 F.2d 512 (4th Cir. 1970), but that case involved a charge of Hobbs Act *extortion*, not robbery, on the basis that "[the defendant] obtained or attempted to obtain money from building contractors *with their consent* by causing the contractors to fear financial and economic loss," *id.* at 513 (emphasis added).   The Government, for its part, contends that "[i]t defies logic to suggest that someone could be robbed by placing him in 'fear of injury' without using or threatening to use physical force."   Gov't Supp. Br. 12; *see also DiSomma*, 951 F.2d at 496 ("[I]f the element of violence is not present, no conviction under section 1951 can occur.").   We conclude as to this argument that while it may indeed be the case that Hobbs Act robbery does not extend to the hypotheticals Hill posits, *see United States v. Pena*, No. 15-cr-551 (AJN), 2016 WL 690746, at *11 (S.D.N.Y. Feb. 11, 2016) (concluding that "fear of injury" in the Hobbs Act robbery statute requires "fear of injury from the use of force"), we need not explicate the statute's outer limits in this regard, as Hill has failed to show any realistic probability that a perpetrator could effect such a robbery in the manner he posits without employing or threatening physical force, *see Duenas-Alvarez*, 549 U.S. at 193 (noting that a predicate conviction fails to qualify as a crime of violence using the

Hill's argument rests on a flawed reading of *Johnson I*. In that case, the Court declined to construe "physical force" for the purposes of § 924(e)(2)(B)(i) in line with the common-law crime of battery, which deemed the element of "force" to be satisfied "by even the slightest offensive touching."[9] 559 U.S. at 139. But in rejecting this interpretive approach, the Court did *not* construe § 924(e)(2)(B)(i) to require that a particular quantum of force be employed or threatened to satisfy its physical force requirement. The Court concluded, instead, that "physical

categorical approach only when there is "a realistic probability, not a theoretical possibility" that the statute at issue could be applied to conduct not constituting such a crime).

[9] We assume *arguendo Johnson I*'s relevance to the construction of § 924(c)(3)(A), but note that the case might not apply to the present statute for at least two reasons. First, as a matter of precedent, our Circuit has long defined the meaning of "physical force" in the context of 18 U.S.C. § 16 (which employs language similar to that used in § 924(c)(3)(A)) as "power, violence, or pressure directed against a person or thing," and we have affirmed this understanding of force in post-*Johnson I* cases. *See Morris v. Holder*, 676 F.3d 309, 314 (2d Cir. 2012) (quoting *Vargas-Sarmiento*, 448 F.3d at 169); *see also Acosta*, 470 F.3d at 134-35 (noting that this Circuit has interpreted § 16 and § 924(c)(3)(A) by applying the same case law). Second, *Johnson I*'s reasoning does not necessarily extend to a statute like § 924(c)(3)(A), which includes within its definition of crime of violence those felonies that have as an element physical force threatened or employed against the person *or property* of another, as opposed to only the former. *Johnson I*'s holding rejected the possibility that mere "offensive touching," sufficient for common-law battery, could constitute a use of physical force in the context of § 924(e)(2)(B)(i). *Johnson I*, 559 U.S. at 139. Yet it is not obvious what "offensive touching" could possibly mean for *property* — a point that may suggest *Johnson I* is inapplicable to the force clause herein, or may simply reinforce our conclusion that nothing in *Johnson I* suggests that force sufficient to injure property would, under that decision, be insufficient to count as a use of physical force.

force" as used in § 924(e)(2)(B)(i) (which defines a violent felony in relevant part as a crime that "has as an element the use, attempted use, or threatened use of physical force against the person of another") means simply "*violent* force — that is, force capable of causing physical pain or injury to another person."  559 U.S. at 140; *see also United States v. Castleman*, 134 S. Ct. 1405, 1417 (2014) (Scalia, J., concurring in part and concurring in judgment) (rejecting the argument that *Johnson I* "requires force capable of inflicting 'serious' bodily injury," as opposed to "force capable of causing physical pain or injury, serious or otherwise"). Assuming *arguendo Johnson I*'s relevance to the construction of § 924(c)(3), "physical force" as used in the provision at issue here means no more nor less than force capable of causing physical pain or injury to a person *or* injury to property.  *See* § 924(c)(3) (defining "crime of violence" in relevant part as a felony with an element requiring "use, attempted use, or threatened use of physical force against the person *or property* of another" (emphasis added)). Hill's hypotheticals then — to the degree that they would indeed satisfy the Hobbs Act's "fear of injury" standard — do not fail to involve the use or threatened use of physical force.

Hill's second claim is no more successful. Hill next contends that an individual can commit a Hobbs Act robbery without using or threatening the use of physical force by putting the victim in fear of injury through such means, *inter alia*, as threatening to withhold vital medicine from the victim or to poison him. Lacking any case in which a defendant was in fact convicted for committing Hobbs Act robbery through such means, Hill relies principally on these hypotheticals to argue that such conduct entails an insufficient direct application of physical force to satisfy the force clause — even if it indisputably involves the threatened *indirect* application of force. These hypotheticals are insufficient because a defendant is required to "point to his own case or other cases in which the . . . courts in fact did apply the statute" in such a manner to show that there is a "realistic probability" that the Hobbs Act would reach the conduct Hill describes. *Duenas-Alvarez*, 549 U.S. at 193.[10] Even assuming, *arguendo*, that there is indeed a "realistic probability" that the Hobbs Act would reach the

---

[10] This requirement also undermines Hill's suggestion that a perpetrator could successfully commit Hobbs Act robbery by unintentionally placing a victim in fear of injury. In support of this argument, he cites a line of out-of-circuit cases interpreting the "intimidation" element of the federal bank robbery statute, 18 U.S.C. § 2113(a), as including unintentional intimidation. *See, e.g.*, *United States v. Kelley*, 412 F.3d 1240, 1244 (11th Cir. 2005). However, these decisions are insufficient because, as is the case with his contention that Hobbs Act robbery includes threats involving the indirect application of force, Hill cannot point to cases in which "courts in fact did apply the statute in the . . . manner for which he argues." *Duenas-Alvarez*, 549 U.S. at 193.

17

conduct Hill describes (or analogous conduct), we again disagree that these hypotheticals demonstrate that a Hobbs Act robbery is not categorically a crime of violence for the purpose of § 924(c)(3)(A).

Hill argues, in effect, that placing a victim in fear of injury by threatening the indirect application of physical force is not sufficient to constitute the threatened use of physical force. Yet the Supreme Court has suggested otherwise. In *Castleman*, the Supreme Court, construing "physical force" as it is employed in connection with § 922(g)(9), made clear that physical force "encompasses even its indirect application," as when a battery is committed by administering a poison: "That the harm occurs indirectly, rather than directly (as with a kick or punch), does not matter" lest we conclude that pulling the trigger on a gun involves no use of force "because it is the bullet, not the trigger, that actually strikes the victim."[11] 134 S. Ct. at 1414-15. Hill offers no persuasive reason why the same principle should not apply to the construction

---

[11] Section 922(g)(9) restricts persons who have been convicted of certain misdemeanor crimes of domestic violence from possessing firearms or ammunition. In relevant part, the statute defines crimes of domestic violence as misdemeanors that "ha[ve], as an element, the use or attempted use of physical force . . . committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim." 18 U.S.C. § 921(a)(33)(A).

18

of § 924(c)(3), so that, as regarding the Hobbs Act, a robbery still has as an element "the use, attempted use, or threatened use of physical force against the person or property of another," notwithstanding that it is accomplished by threatening to poison a victim, rather than to shoot him. Some threats do not require specification of any particular means in order to be effective; yet they still threaten *some* type of violence and the application of *some* force. Consider: "That's a nice car — would you like to be able to continue driving it?"

Hill relies on *Chrzanoski v. Ashcroft*, 327 F.3d 188, 194 (2d Cir. 2003), to argue that "the act of placing another in fear of injury" constitutes, "at best," a "threat of *injury*," which is not the same as a threat of physical force. Hill Supp. Br. 24-25. In *Chrzanoski*, we addressed a Connecticut misdemeanor that criminalized causing injury to another person, concluding that the misdemeanor at issue there was not a crime of violence for the purpose of deportation proceedings and as defined in 28 U.S.C. § 16(a) because it did not require that injury be caused through the use of physical force.[12]  327 F.3d at 195-96; *see also Vargas-Sarmiento*, 448 F.3d at 175 n.10 (noting that, in *Chrzanoski*, "[b]ecause the

---

[12] As already noted, § 16 defines a crime of violence similarly to § 924(c)(3), and we have interpreted both statutes by applying the same case law.  *See Acosta*, 470 F.3d at 134-35.

19

plain language of the Connecticut statute did not make use of force an explicit or implicit element, we ruled that misdemeanor third degree assault was not a crime of violence under § 16(a)").   But as we have said, the taking of personal property "'by force,' . . . *is* required in Hobbs Act robbery."   *Santos*, 449 F.3d at 99 (emphasis added); *see also DiSomma*, 951 F.2d at 496 ("[I]f the element of violence is not present, no conviction under section 1951 can occur.").   And such robberies may be accomplished, *inter alia*, by placing the victim in fear of injury at the point of a gun (as in the present case) or by other menacing conduct, as when a perpetrator "wrongfully and intentionally use[s] an individual's reputation 'as a prominent figure in the Russian criminal underworld alone' to instill fear."   *Santos*, 449 F.3d at 100-01.   To the degree that any aspect of *Chrzanoski*'s reasoning suggests that the conduct Hill describes does not involve the threatened use of physical force, moreover, the *Chrzanoski* panel did not have the benefit of the Supreme Court's reasoning in *Castleman* to the effect that a use of physical force can encompass acts undertaken to cause physical harm, even when the harm occurs indirectly (as with poisoning) "rather than directly (as with a kick or punch)."   *Castleman*, 134 S. Ct. at 1415; *see also Vargas-Sarmiento*, 448 F.3d at 175 (observing, in the context of § 16(b), that "we are not persuaded

20

by [the] argument that first-degree manslaughter is not a crime of violence when it is committed by a person who intentionally poisons the food of an unwitting victim rather than by a person who directly injects the poison into his victim's arm[, as i]n either situation, the killer has intentionally availed himself of the forceful physical properties of poison to cause death"). Accordingly, we are unpersuaded by Hill's reliance on *Chrzanoski.*

In sum, we agree with the Ninth Circuit, *see* supra note 6, that Hobbs Act robbery "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A). We have considered each of Hill's arguments to the contrary and conclude that they are all without merit.[13]

---

[13] A panel of this circuit recently held that New York's first-degree robbery statute, *see* N.Y. Penal Law §§ 160.00, 160.15, fails to categorically qualify as a "crime of violence" for purposes of U.S.S.G. § 4B1.2(a)(1), as it is possible to commit it "without necessarily using violent force." *United States v. Jones*, No. 15-1518, 2016 WL 3923838, at *6 (2d Cir. July 21, 2016). Hill's suggestion that this decision has any relevance to ours is mistaken. The *Jones* panel addressed a distinct robbery statute, *compare* N.Y. Penal Law § 160.15 (including under the definition of first-degree robbery the case where the defendant or another participant in the crime "is armed with a deadly weapon"), *with* 18 U.S.C. § 1951, and it interpreted that statute with reference to a distinct body of state-law precedent inapposite in our case. *See Jones*, 2016 WL 3923838, at *5. Additionally, the *Jones* panel assessed whether the state-law conviction was a crime of violence for purposes of U.S.S.G. § 4B1.2(a)(1) which, unlike 18 U.S.C. § 924(c)(3)(A), does not include the use or threatened use of "physical force against the person or *property* of another." § 924(c)(3)(A) (emphasis added); *compare*

## III

Even if Hobbs Act robbery did not qualify as a crime of violence pursuant to § 924(c)(3)(A), such a robbery unequivocally qualifies as a crime of violence pursuant to § 924(c)(3)(B) because it, "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 924(c)(3)(B). Hill does not contend otherwise. Instead, he argues that § 924(c)(3)(B) is inapplicable here on the ground that the risk-of-force clause is void for vagueness in light of *Johnson II.* For the following reasons, we disagree.

The Fifth Amendment guarantees that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." From this constitutional provision stems the proscription against vague criminal laws.

U.S.S.G. § 4B1.2(a)(1) (qualifying offenses must have "as an element the use, attempted use, or threatened use of physical force against the *person* of another" (emphasis added)). Nor is *Jones*'s suggestion, in dicta, that the previous version of U.S.S.G. § 4B1.2(a) is "likely void for vagueness in light of [*Johnson II*]," relevant to our analysis in Part III of this opinion. *Jones*, 2016 WL 3923838, at *6. Unlike the risk-of-force clause in this case, the prior version of § 4B1.2(a)(2) *was* textually identical to § 924(e)(2)(B) (the clause at issue in *Johnson II*). *See* U.S.S.G. § 4B1.2(a) (2015) (defining "crime of violence" as a qualifying offense that "is burglary of a dwelling, arson, or extortion, involves the use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another"). As we explain in this opinion, the risk-of-force clause at issue here contains no confusing list of predicate offenses and is significantly narrower in scope than the clause at issue in *Johnson II* – material distinctions that make all the difference. *See infra* Part III.

"The void-for-vagueness doctrine prohibits the government from imposing sanctions 'under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement.'" *Welch v. United States*, 136 S. Ct. 1257, 1262 (2016) (quoting *Johnson II*, 135 S. Ct. at 2556).

In *Johnson II*, the Supreme Court concluded that the "residual clause" of the ACCA, 18 U.S.C. § 924(e)(2)(B)(ii), is unconstitutionally vague. 135 S. Ct. at 2557. Before *Johnson II*, the ACCA worked as follows. In general, an individual who unlawfully possessed a firearm could be punished by up to 10 years' imprisonment. 18 U.S.C. §§ 922(g), 924(a)(2). But if the violator had three or more prior convictions for a "serious drug offense" or a "violent felony," the ACCA extended his or her prison term to a minimum of 15 years and a maximum of life. *Id.* § 924(e)(1). The ACCA defined a "violent felony" as any felony that

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

> (ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another . . . .*

23

*Id.* § 924(e)(2)(B) (emphasis added). *Johnson II* determined that the so-called "residual clause" of subsection (ii), italicized above, is constitutionally invalid.

The Supreme Court in *Johnson II* determined that "[t]wo features of the residual clause conspire to make it unconstitutionally vague." 135 S. Ct. at 2557. In particular, the Court focused on the double-layered uncertainty embedded in the clause's operation — which required courts employing the categorical approach first to estimate the potential risk of physical injury posed by "a judicially imagined 'ordinary case' of [the] crime" at issue, and then to consider how this risk of injury compared to the risk posed by the four enumerated crimes, which are themselves, the Court noted, "far from clear in respect to the degree of risk each poses."[14] *Id.* at 2557-58 (quoting *Begay v. United States*, 553

---

[14] As the *Johnson II* Court recognized, "[b]y asking whether the crime 'otherwise involves conduct that presents a serious potential risk,' . . . the residual clause forces courts to interpret 'serious potential risk' in light of the four enumerated crimes — burglary, arson, extortion, and crimes involving the use of explosives." 135 S. Ct. at 2558 (emphasis omitted). But no rhyme or reason appears to connect these crimes, in terms of assessing either the method for evaluating the risk of injury posed, or the degree of risk: "Does the ordinary burglar invade an occupied home by night or an unoccupied home by day? Does the typical extortionist threaten his victim in person with the use of force, or does he threaten his victim by mail with the revelation of embarrassing personal information?" *Id.* The Court concluded that "[c]ommon sense has not . . . produced a consistent conception of the degree of risk posed by each of the four enumerated crimes" and that these crimes "are not much more similar to one another in kind than in degree of risk posed." *Id.* at 2559.

U.S. 137, 143 (2008)). It was these twin ambiguities — "*combining* indeterminacy about how to measure the risk posed by a crime with indeterminacy about how much risk it takes for the crime to qualify as a violent felony" — that offended the Constitution. *Id.* at 2558 (emphasis added); *see also id.* at 2560 (observing that "[e]ach of the uncertainties in the residual clause may be tolerable in isolation, but 'their sum makes a task for us which at best could be only guesswork'" (quoting *United States v. Evans*, 333 U.S. 483, 495 (1948))).

We conclude that the Supreme Court's explanation for its conclusion in *Johnson II* renders that case inapplicable to the risk-of-force clause at issue here. Section 924(c)(3)(B) does not involve the double-layered uncertainty present in *Johnson II*. Granted, courts construing the provision must grapple with assessing the risk of physical force posed by the "ordinary" instance of a predicate crime. Assessing whether a felony, by its nature, poses a substantial risk that "physical force against the person or property of another may be used in the course of committing the offense," § 924(c)(3)(B), however, is a far narrower and simpler undertaking than divining whether a felony, not being one of four enumerated, but disparate crimes, "otherwise involves conduct that presents a serious potential risk of physical injury to another," § 924(e)(2)(B)(ii). A

straightforward comparison of the texts of the two provisions — analyzed in light of the reasoning in *Johnson II* and other case law — makes clear that Hill is mistaken in suggesting that the provisions are materially indistinguishable.

First, and most obviously, the risk-of-force clause contains no mystifying list of offenses and no indeterminate "otherwise" phraseology — a defining feature of the ACCA's residual clause that, in *Johnson II*, was understood to add an additional layer of uncertainty as to "how much risk it takes for a crime to qualify as a violent felony." 135 S. Ct. at 2558. In *Johnson II*, the Court cited this list as a key aspect of § 924(e)(2)(B)(ii), distinguishing the ACCA's residual clause from other laws that the Government warned could be vulnerable to vagueness challenge. Indeed, the Court rejected the Government's argument that its decision in *Johnson II* would draw into question statutes that, like the one here, do not "link[ ] a phrase such as 'substantial risk' to a confusing list of examples." *Id.* at 2561. Moreover, an analysis of the Court's pre-*Johnson II* precedents attempting to construe the residual clause makes clear that the presence of these enumerated offenses was, as *Johnson II* suggested, the prime cause of uncertainty in that provision, and the key obstacle to consistent judicial

construction.[15]   As the Court recognized in *Begay*, the enumerated offenses are

"far from clear in respect to the degree of risk each poses."   553 U.S. at 143.   The

_____

[15] In these earlier cases, the Court consistently relied on the list of offenses as its primary tool of construction through which to determine which predicate crimes constituted violent felonies.  *See, e.g.*, *Sykes v. United States*, 564 U.S. 1, 15-16 (2011) (observing that "[t]he residual clause imposes enhanced punishment for unlawful possession of [a] firearm when the relevant prior offenses involved a potential risk of physical injury similar to that presented by burglary, extortion, arson, and crimes involving use of explosives," though noting that "this approach may at times be more difficult for courts to implement"); *Begay*, 553 U.S. at 143 (holding that "the examples in [the residual clause] limit the scope of the clause to crimes that are similar to the examples themselves"); *James v. United States*, 550 U.S. 192, 218 n.1 (2007) (Scalia, J., dissenting) (referring to the list of enumerated offenses as providing "the defining characteristic of the residual provision").   Nevertheless, although the Justices seemed largely to agree that the enumerated list was dispositive of the required analysis, they consistently diverged on *how* Congress intended the list itself to be employed. *Compare, e.g.*, *Begay*, 553 U.S. at 143 (holding that courts "should read the examples as limiting the crimes that [the residual clause] covers to crimes that are roughly similar, in kind as well as in degree of risk posed, to the examples themselves"), *with id.* at 149 (Scalia, J., concurring in the judgment) (arguing instead that the Court should "determine which of the enumerated offenses poses the least serious risk of physical injury, and then . . . set that level of risk as the 'serious potential risk' required by the statute"); *and id.* at 158-59 (Alito, J., dissenting) (disagreeing with the majority's view that predicate crimes must be similar not only in degree of risk, but also in kind, to the enumerated offenses).   The Justices also consistently disagreed on what unified the four enumerated offenses for purposes of defining the requisite level of risk.   *Compare, e.g.*, *Begay*, 553 U.S. at 144-45 (majority opinion) (arguing that the four enumerated crimes "all . . . involve[d] purposeful, 'violent,' and 'aggressive' conduct" and relying on this characteristic to exclude a DUI conviction), *with Sykes*, 564 U.S. at 13 (noting that the "phrase 'purposeful, violent, and aggressive' has no precise textual link to the residual clause," and that, most of the time, "risk levels provide a categorical and manageable standard"); *and id.* at 36 n.1 (Kagan, J., dissenting) ("I understand the majority to retain the 'purposeful, violent, and aggressive' test, but to conclude that it is 'redundant' in this case."); *compare, e.g.*, *James*, 550 U.S. at 199 ("[T]he most relevant common attribute of the enumerated offenses of burglary, arson, extortion, and

Court reaffirmed this point in *Johnson II*, noting the absence of apparent commonalties among the enumerated offenses, and the confusion thereby generated in construing the residual provision. *See* 135 S. Ct. at 2557-60. In short, as *Johnson II* itself attests, it is evident that the Court's "repeated failures to craft a principled and objective standard out of the residual clause" were failures in large part because of the list of enumerated offenses. 135 S. Ct. at 2558.[16]

Moreover, even if the list of enumerated offenses is not alone sufficient to distinguish the residual clause in *Johnson II* from the risk-of-force clause at issue here (a conclusion which would ignore the Court's fraught history with the residual clause), the text of the risk-of-force clause differs in additional, material ways. The ACCA's residual clause defines crimes as violent felonies if they,

explosives use is . . . that all of these offenses . . . create significant risks of bodily injury or confrontation that might result in bodily injury."), *with id.* at 218 n.1 (Scalia, J., dissenting) (criticizing the majority for "imprecisely identif[ying] the common characteristic of the enumerated offenses," and arguing that "the word 'confrontation' . . . is an invention entirely divorced from the statutory text").

[16] Indeed, absent such a confounding list of inconsistent enumerated offenses, the Court has had little trouble interpreting language in 18 U.S.C. § 16(b) that is the same as that in the risk-of-force clause at issue here. *See Leocal v. Ashcroft*, 543 U.S. 1, 11 (2004) (observing, in a unanimous decision, that "[t]he ordinary meaning of ['crime of violence'], combined with § 16's emphasis on the use of physical force against another person (or the risk of having to use such force in committing a crime), suggests a category of violent, active crimes that cannot be said naturally to include DUI offenses").

*inter alia*, "present[] a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii). This terminology is materially different from that in the risk-of-force clause, which defines predicate crimes as those that by their "nature[] involve[] a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." *Id.* § 924(c)(3)(B). Both the Supreme Court and this Court have noted that the language in the latter provision is both narrower *and* easier to construe. *See Leocal v. Ashcroft*, 543 U.S. 1, 10 (2004) (holding that "[t]he reckless disregard in § 16 [employing the language of § 924(c)(3)(B)] relates *not* to the general conduct or to the possibility that harm will result from a person's conduct, but to the risk that the use of physical force against another might be required in committing a crime"); *id.* at 10 n.7 (noting that "§ 16(b) *plainly* does not encompass all offenses which create a 'substantial risk' that *injury* will result from a person's conduct" (emphasis added)); *Jobson*, 326 F.3d at 372-73 ("[T]he risk that a defendant will use physical force in the commission of an offense is materially different from the risk that an offense will result in physical injury."); *id.* at 373 n.5 (observing that the "risk of physical injury" language "was intended to be broader" than the language in the risk-of-force clause). Indeed, in interpreting the language in

§ 16(b), which is materially indistinguishable from the provision at issue here, we have had little trouble narrowing, and construing, its scope. *See, e.g.*, *id.* at 374 ("[S]ection 16(b) requires that an offense inherently poses a substantial risk that a defendant will [intentionally] use physical force . . . ."). As one of our sister circuits recently observed, even apart from the enumerated offenses, the language of the risk-of-force clause "is distinctly narrower" than that in the residual clause, and in a manner that makes it easier to construe. *United States v. Taylor*, 814 F.3d 340, 375-76 (6th Cir. 2016) (rejecting the argument that *Johnson II* "compels the conclusion" that the risk-of-force clause is void for vagueness).

It is unsurprising, then, that the risk-of-force clause has no history of "repeated attempts and repeated failures" on the part of courts "to craft a principled and objective standard" out of its terms — the sort of doctrinal history that *Johnson II* recognized was sufficient to "confirm [the] hopeless indeterminacy" of the residual clause. 135 S. Ct. at 2558. The Court explained in *Johnson II* that "the failure of 'persistent efforts . . . to establish a standard' can provide evidence of vagueness." *Id.* (alteration in original) (quoting *United States v. L. Cohen Grocery Co.*, 255 U.S. 81, 91 (1921)). But there is no such

30

troubled interpretive history with respect to the risk-of-force clause. As the Sixth Circuit recently recognized, while "the Supreme Court reached its void-for-vagueness conclusion only after struggling mightily for nine years to come up with a coherent interpretation of the [residual] clause, . . . no such history has occurred with respect to § 924(c)(3)(B)." *Taylor*, 814 F.3d at 376. This, too, counts against Hill's position.

Hill argues that *Johnson II* also relied in part on the fact that the ACCA's residual clause, like the risk-of-force clause, requires application of the categorical approach, with its attendant difficulties in determining the parameters of the "ordinary case" of a predicate crime. This is true. But we conclude that this fact alone is not nearly enough to render the risk-of-force clause void for vagueness. As the Sixth Circuit recognized in *Taylor*, the Supreme Court in *Johnson II* did not conclude that statutes requiring such an approach are thereby rendered unconstitutionally vague. 814 F.3d at 378.[17] To

---

[17] Hill argues that *Taylor* is distinguishable in that it relied on the fact that the Sixth Circuit does not use a categorical approach "in many § 924(c) cases" in upholding the risk-of-force clause. Hill's July 28 Response to Gov't's 28(j) Letter at 2 n.1, *United States v. Hill*, No. 14-3872 (2d Cir. Aug. 2, 2016), ECF No. 112 (citing *Shuti v. Lynch*, __ F.3d __, 2016 WL 3632539, at *8 (6th Cir. July 7, 2016)). The panel in *Taylor* explicitly disclaimed any such reading of its opinion. *See Taylor*, 814 F.3d at 378 (noting that "[i]t is true that *Johnson* [*II*] also relied in part on the fact that the ACCA residual clause, *like*

the contrary, the Court took pains to note that it was a *combination* of factors that together rendered the residual clause invalid: "Each of the uncertainties in the residual clause may be tolerable in isolation, but 'their sum makes a task for us which at best could be only guesswork.'" *Johnson II*, 135 S. Ct. at 2560 (quoting *Evans*, 333 U.S. at 495). No such factors conspire to suggest that § 924(c)(3)(B) is constitutionally infirm.

We note that four other circuits — the Fifth, Sixth, Seventh, and Ninth — have considered the language in 18 U.S.C. § 16(b), which appears materially the same as that in § 924(c)(3)(B), and have determined that § 16(b) is void for vagueness after *Johnson*. *Shuti v. Lynch*, __ F.3d __, 2016 WL 3632539 (6th Cir. July 7, 2016); *United States v. Gonzalez-Longoria*, 813 F.3d 225, 227 (5th Cir. 2016), *en banc rehearing granted*, 815 F.3d 189 (5th Cir. 2016) (mem.); *United States v. Vivas-Ceja*, 808 F.3d 719, 723 (7th Cir. 2015); *Dimaya v. Lynch*, 803 F.3d 1110, 1120 (9th Cir. 2015). Although we generally interpret § 16(b) and § 924(c) by

*§ 924(c)(3)(B)*, requires the application of a categorical approach, which requires courts to look at the ordinary case of the predicate crime" before concluding that this similarity was insufficient to render the risk-of-force clause unconstitutionally vague (emphasis added)); *accord id.* at 394 (White, J., concurring in part and dissenting in part) (stating that the Sixth Circuit applies the categorical approach to the risk-of-force clause).

applying the same case law, *see Acosta*, 470 F.3d at 134-35, we find these opinions unpersuasive for three reasons.

First, each greatly underestimates — or misunderstands — the significance of the list of enumerated offenses in the ACCA's residual clause to the decision in *Johnson II*, in part by failing to engage with the precedent that preceded, and informed, that decision.[18]  Second, these cases either ignore or minimize the other textual distinctions between the residual clause and the language of § 16(b).[19]  Finally, each case dismisses the significance of the Supreme Court's

---

[18] *See Shuti*, 2016 WL 3632539, at *7; *Gonzalez-Longoria*, 813 F.3d at 232-34 (though acknowledging that § 16(b) is "arguably at least slightly less imprecise" than the language in the ACCA's residual clause, suggesting that "[a]rguably, having no examples is worse than having unclear examples"); *Vivas-Ceja*, 808 F.3d at 723 (observing that "the enumeration of specific crimes . . . wasn't one of the 'two features' that combined to make the [residual] clause unconstitutionally vague," and thus misunderstanding that the list was a primary impetus for the second feature, "indeterminacy about how much risk it takes for the crime to qualify as a violent felony," *Johnson II*, 135 S. Ct. at 2558); *Dimaya*, 803 F.3d at 1118 & n.13 (first minimizing the significance of the enumerated offenses to *Johnson II*'s analysis, and then noting that "[a]lthough *Johnson* [*II*] concluded that the enumerated offenses added to the residual clause's indeterminacy, it could well be argued that, if anything, § 16(b) is more vague than the residual clause because of its lack of enumerated examples").

[19] *See Shuti*, 2016 WL 3632539, at *7; *Gonzalez-Longoria*, 813 F.3d at 232 (acknowledging the textual differences, but arguing that they are "slight"); *Vivas-Ceja*, 808 F.3d at 722 (noting that the "language [in § 16(b)], though not identical to the residual clause, is materially the same"); *Dimaya*, 803 F.3d at 1114-18 (referring to the two textual provisions as "similar," providing no analysis of the distinction between the phrases "risk of physical injury" and "risk that physical force . . . may be used," and

fraught precedent interpreting the ACCA's residual clause, and in doing so not only disregards the significance of that precedent to the *Johnson II* decision, *see* 135 S. Ct. at 2558-61 (discussing these prior cases), but also fails to grapple with the fact that the textual aspects unique to the residual clause were largely to blame for that confusion. *See Shuti*, 2016 WL 3632539, at *8; *Gonzalez-Longoria*, 813 F.3d at 234; *Vivas-Ceja*, 808 F.3d at 723; *Dimaya*, 803 F.3d at 1119.

For these reasons, we do not find these § 16(b) cases persuasive, and we decline to follow their reasoning here. Indeed, we conclude that to do so would not apply *Johnson II*, but would extend it in a way flatly inconsistent with that decision's own articulation of the limitations of its holding. *See* 135 S. Ct. at 2561. Having considered each of Hill's arguments that the risk-of-force clause is unconstitutionally vague, we are unpersuaded.

## CONCLUSION

For the foregoing reasons, and for those stated in the summary order that accompanies this decision, we **AFFIRM** the judgment of conviction.

---

suggesting that any distinction created by the presence of the words "in the course of committing the offense" in § 16(b) "would not save [that provision] from unconstitutionality").