**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-1402
_____

UNITED STATES OF AMERICA

v.

ANTHONY ROBINSON,
                                    Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D. C. Criminal No. 2-13-cr-00232-001)
District Judge:  Honorable Berle M. Schiller

_____

Argued on April 18, 2016

Before:  MCKEE, Chief Judge,[*] FUENTES and ROTH,
<u>Circuit Judges</u>

_____

[*] Judge McKee was Chief Judge at the time this appeal was argued.  Judge McKee completed his term as Chief Judge on September 30, 2016.

(Opinion filed: December 19, 2016)

Robert Epstein, Esquire
Brett G. Sweitzer, Esquire          (**Argued**)
Federal Community Defender Office for
the Eastern District of Pennsylvania
601 Walnut Street
The Curtis Center, Suite 540 West
Philadelphia, PA 19106

          Counsel for Appellant


Jeanine Linehan, Esquire
Bernadette A. McKeon, Esquire **(Argued)**
Jordan Strauss, Esquire
Robert A. Zauzmer, Esquire
Office of United States Attorney
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106

          Counsel for Appellee

_____

O P I N I O N

_____

**ROTH**, Circuit Judge:

In this appeal, we are called upon to determine whether Anthony Robinson, when he brandished a firearm in the commission of a Hobbs Act robbery, committed a "crime of violence." On September 17, 2014, Anthony Robinson was convicted of one count, under 18 U.S.C. § 924(c), of brandishing a firearm during the commission of a crime of violence and two counts, under 18 U.S.C. § 1951(a), of Hobbs Act robbery. On appeal, Robinson asks us to overturn his conviction on the § 924(c) offense on the basis that Hobbs Act robbery is not a "crime of violence." We conclude that when, as here, the two offenses, robbery and brandishing a gun, have been tried together and the jury has reached a guilty verdict on both offenses, the Hobbs Act robbery qualifies as a crime of violence under the "elements clause" of 18 U.S.C. § 924(c)(3)(A). Thus, for the reasons stated below, we will affirm Robinson's conviction on all counts. However, with the agreement of the government, we will remand this matter for further proceedings to determine whether Robinson was properly sentenced as a career offender.

**I.**

On December 1, 2012, Robinson committed two robberies in Philadelphia, approximately two hours apart. In the first of these robberies, Robinson produced a handgun and demanded all of the money in the cash register from the cashier at a Subway sandwich shop. In the second robbery at Anna's Linens store, Robinson again produced a handgun and demanded the money in the register from the store's cashier. Both robberies were recorded by on-site video surveillance cameras.

3

The next day, the Subway cashier observed Robinson walking on the street and, recognizing him as the perpetrator from the previous day's robbery, immediately notified police. After police recovered surveillance video and compared Robinson's image to that of the robber in the video, Robinson was arrested for the Subway robbery. Suspecting that Robinson might also have been responsible for the Anna's Linens robbery, a Philadelphia Police Detective prepared a photo array that included a photograph of Robinson. The cashier identified Robinson from the array.

On May 9, 2013, a grand jury returned an indictment charging Robinson with two counts of robbery by means of actual and threatened force, violence and fear of injury, by brandishing a handgun, affecting interstate commerce, in violation of 18 U.S.C. § 1951(a), also known as Hobbs Act robbery, and two counts of using and carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c). Prior to trial, Robinson moved to suppress, *inter alia*, the photo array identification made by the Anna's Linens cashier. This motion was denied. Robinson also submitted a letter to the District Court requesting to proceed *pro se*. During an ex parte hearing to consider this request, Robinson decided to proceed with counsel. Later, following a hearing on his motion to suppress, Robinson made an oral request to proceed *pro se*. The court directed Robinson to file a motion. No motion was filed.

Following a two-day trial, Robinson was convicted of both robberies and of brandishing a firearm during and in relation to the Subway robbery. Robinson was sentenced as a career offender based on a 1990 Pennsylvania robbery

conviction and a 2009 Maryland carjacking conviction. This appeal followed.

## II.

Robinson raises four issues on appeal: (1) his conviction under 18 U.S.C. § 924(c), which requires that Hobbs Act robbery qualify as a "crime of violence" as it is defined therein; (2) the District Court's denial of his motion to suppress the photo array identification; (3) the District Court's failure to conduct a hearing pursuant to *Faretta v. California*[1] in response to Robinson's request to proceed *pro se*; and (4) Robinson's "career offender" status, which requires that he have two prior convictions that meet the definition of "crime of violence" set forth in the Sentencing Guidelines, U.S.S.G. § 4B1.1(b). The District Court had jurisdiction over Robinson's case pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291 of Robinson's challenges of his conviction and pursuant to 28 U.S.C. § 3742 of Robinson's sentencing challenge. We will focus our discussion on Robinson's challenge of his § 924(c) conviction.

## III.

Robinson was convicted under 18 U.S.C. § 924(c) of brandishing a firearm during and in relation to the Hobbs Act robbery of the Subway store. On appeal, Robinson argues that Hobbs Act robbery is not a crime of violence as required for a conviction under § 924(c). Because Robinson raises this issue for the first time on appeal, we will review for plain

---

[1] 422 U.S. 806 (1975).

error.[2]

18 U.S.C. § 924(c)(3) defines a "crime of violence" as a felony that

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.[3]

These clauses are known as the "elements clause" and the "residual clause," respectively. Robinson asks us to hold that Hobbs Act robbery is not a crime of violence under the elements clause and that the residual clause is void for vagueness in light of the Supreme Court's decision in *Johnson v. United States*.[4] Because we conclude that Robinson's Hobbs Act robbery is a crime of violence under the elements clause, we will not address Robinson's challenge to the residual clause.[5]

---

[2] *United States v. Saada*, 212 F.3d 210, 223 (3d Cir. 2000).

[3] 18 U.S.C. § 924(c)(3)(A)-(B).

[4] 135 S. Ct. 2551 (2015).

[5] Appellant argues that our recent decision in *Baptiste v. Attorney Gen.*, No. 14-4476, 2016 WL 6595943, at *7 (3d Cir. Nov. 8, 2016) forecloses our application of 18 U.S.C. § 924(c)'s residual clause. Although we do not rely on the residual clause to resolve this case, we note that *Baptise* is not necessarily applicable here. In *Baptiste*, the Court considered whether the defendant's *prior* state conviction constituted a

**A.**

Both Robinson and the government suggest that our analysis under the elements clause should be guided by the so-called "categorical approach." We do not agree that the categorical approach applies here. When the predicate offense, Hobbs Act robbery, and the § 924(c) offense are contemporaneous and tried to the same jury, the record of all necessary facts are before the district court. The jury's determination of the facts of the charged offenses unmistakably shed light on whether the predicate offense was committed with "the use, attempted use, or threatened use of physical force against the person or property of another." The remedial effect of the "categorical" approach is not necessary.

We can best explain our conclusion here by beginning with a review of the origin of and the reasons for the "categorical" approach. The categorical approach emerged as a means of judicial analysis in *Taylor v. United States*.[6] *Taylor* involved a criminal defendant challenging the imposition of a sentencing enhancement known as the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), which applies when a defendant has three prior convictions for a "violent felony."[7] The issue in *Taylor* was whether two

---

predicate violent offense. Our inquiry here, however, asks whether a federal offense that was *contemporaneously* tried with § 924(c) possession may properly serve as a predicate offense. Resolution here is distinguishable because it does not require consideration of a prior state conviction.

[6] 495 U.S. 575 (1990).
[7] *Id.* at 578.

7

second-degree burglary convictions under Missouri law could be considered violent felonies for the purpose of applying the enhancement. The *Taylor* Court concluded that only the conviction itself and the statutory definition of the particular offense, and not a description of the defendant's conduct, could be considered in determining whether an offense qualified as a violent felony under the ACCA.[8]

*Taylor*'s categorical approach rested on three rationales. First, the language defining "violent felony" in 18 U.S.C. § 924(e)(2)(B) supports the notion that sentencing courts are to look at the offense of conviction itself and not at particular facts of an underlying conviction.[9] Second, the legislative history of the ACCA suggests that Congress intended that sentencing courts use a categorical approach.[10] Third, a fact-based approach would produce "practical difficulties and potential unfairness."[11] Violent felony convictions that are counted for an ACCA enhancement are often adjudicated by different courts in proceedings that occurred long before the defendant's sentencing. In *Taylor*, the two convictions at issue had been adjudicated in Missouri state courts; the most recent of these convictions had occurred 17 years prior to the proposed application of the ACCA.[12] The *Taylor* Court recognized the challenges in determining the precise facts underlying a defendant's conviction when those facts are not plain from the elements of the offense itself. Determining facts of the earlier conviction could

---

[8] *Id.* at 602.
[9] *Id.* at 600-01.
[10] *Id.* at 601.
[11] *Id.* at 601-02.
[12] *Id.* at 578.

require a sentencing court to engage in evidentiary inquiries based on what occurred at a trial in the distant past.

Since the Court's decision in *Taylor*, developments in the law have provided an additional reason for avoiding factual inquiries. The Supreme Court has held that a criminal defendant's Sixth Amendment rights are violated when a fact that increases the maximum penalty for a crime is not submitted to a jury.[13] As the Court recognized in *Shepard v. United States*, this principle would extend to determination of facts that render a particular crime a "violent felony" and therefore support application of the ACCA.[14]

The analysis in *Taylor* was born from the Court's interpretation of the ACCA's definition of a "violent felony" in 18 U.S.C. § 924(e)(2)(B), which provides in relevant part that a violent felony:

> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

> (ii) is burglary, arson, or extortion, involves the use of explosives, or otherwise involves conduct that presents a serious risk of physical injury to another . . ..[15]

Although *Taylor* focused on whether a Missouri burglary

---

[13] *Jones v. United States*, 526 US. 227, 243 n.6 (1999); *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).
[14] 544 U.S. 13, 24 (2005) (citing *Jones*, 526 U.S. at 243 n.6, and *Apprendi*, 530 U.S. at 490).
[15] 18 U.S.C. § 924(e)(2)(B).

conviction would qualify as a "burglary" under the second clause of this definition—the "enumerated offenses" clause—the Court's justification of the categorical approach relied on the complete definition in § 924(e)(2)(B).[16] Consequently, the categorical approach has been applied both to the other clauses in the ACCA's "violent felony" definition as well as to definitions of similar terms that mirror much of the ACCA's language.[17]

Despite the unequivocal language animating the decisions applying the categorical approach, the *Taylor* Court recognized that a "narrow range of cases" would require a sentencing court to look beyond the elements of an offense to "the charging paper and jury instructions" in order to determine whether a particular offense could qualify as a violent felony under the ACCA.[18] This "modified categorical approach" applies when the statute defining the offense in

---

[16] *Taylor*, 495 U.S. at 600-02.

[17] *See, e.g.*, *Johnson v. United States*, 559 U.S. 133, 136-38 (2010) (applying a categorical approach under 18 U.S.C. § 924(e)(2)(B)(i)); *Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684) (describing the application of the categorical approach to determine whether a particular crime is an "aggravated felony" under the Immigration and Nationality Act); *Leocal v. Ashcroft*, 543 U.S. 1, 9-11 (2004) (applying the categorical approach under 18 U.S.C. § 16, defining a "crime of violence"). *But see Nijhawan v. Holder*, 557 U.S. 29, 36 (2009) (statutory provision defining aggravated felony as an offense that "involves fraud or deceit in which the loss to the victim or victims exceeds $10,000" called for factual inquiry regarding amount of loss).

[18] *Taylor*, 495 U.S. at 602.

question is "divisible"—that is, when one or more of the elements of the offense has an alternative.[19] The modified categorical approach is not meant to supplant the categorical approach. Rather, it "merely helps implement the categorical approach" when a defendant has been convicted of violating a statute that may only qualify as a predicate offense in particular applications of the statute.[20] In order to determine what application of a statute is involved in a particular case, we can look at, among other documents, the charging documents.[21]

In the case before us of contemporaneous offenses of Hobbs Act robbery and of brandishing a handgun, the modified categorical approach is inherent in the district court's consideration of the case because the relevant indictment and jury instructions are before the court.

For this reason, the approach we adopt here recognizes the differences between § 924(c) and other statutes that require categorical analysis, while at the same time being guided by the rationales put forth in *Taylor* and the limits set by our Constitution. Because the determination of whether a particular crime qualifies as a "crime of violence" under § 924(c) depends upon both the predicate offense, here Hobbs Act robbery, and the contemporaneous conviction under § 924(c), the § 924(c) conviction will shed light on the means by which the predicate offense was committed. Looking at a contemporaneous conviction allows a court to determine the

---

[19] *See Descamps v. United States*, 133 S. Ct. 2276, 2281 (2013).
[20] *Id.* at 2285.
[21] *Shepard v. U.S.*, 544 U.S. 13, 26 (2005).

basis for a defendant's predicate conviction. The defendant suffers no prejudice because the court is not finding any new facts which are not of record in the case before it.

We conclude that analyzing a § 924(c) predicate offense in a vacuum is unwarranted when the convictions of contemporaneous offenses, read together, necessarily support the determination that the predicate offense was committed with the "use, attempted use, or threatened use of physical force against the person or property of another."[22] In so doing, we do not direct courts to speculate as to facts. The only facts that may support the conclusion that a particular crime is a "crime of violence" are those that have either been found by the jury or admitted by the defendant in a plea.

Robinson argues, however, that we should look at the statutory definition of Hobbs Act robbery and determine whether it "has as an element" the actual, threatened, or attempted use of force against person or property.[23] Hobbs Act robbery is defined as

> the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, *by means of actual or threatened force , or violence, or fear of injury, immediate or future, to his person or property*, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.[24]

---

[22] 18 U.S.C. § 924(c)(3)(A).

[23] *Id.*

[24] 18 U.S.C. § 1951(b)(1) (emphasis added).

The definition of Hobbs Act robbery borrows conceptually, if not linguistically, from § 924(c)(3)(A)'s definition of "crime of violence." Both definitions refer to the use or threatened use of force against person or property, and the robbery definition goes so far as to include the term "violence." This language would seem adequate in and of itself to satisfy the "elements" clause of § 924(c)(2)(B).

Robinson contends, nevertheless, that under the categorical approach, we should look only to the minimum conduct criminalized by the statute in determining whether it is a crime of violence.[25] Thus, Robinson described a number of scenarios in which someone could commit a Hobbs Act robbery without using or threatening to use force. Robinson focuses on the phrase "fear of injury" to envisage a scenario where, for example, a threat is made to an intangible economic interest without any use of force. Among Robinson's examples are threats of "throwing paint on someone's house, pouring chocolate syrup on someone's passport, or spray painting someone's car."

While this display leaves no doubts in our minds that Robinson's counsel is creative, it is not necessary to our analysis. In addition to being convicted of Hobbs Act robbery, Robinson was convicted of brandishing a firearm while committing Hobbs Act robbery. The question, therefore, is not "is Hobbs Act robbery a crime of violence?" but rather "is Hobbs Act robbery *committed while brandishing a firearm* a crime of violence?" The answer to this question must be yes.

---

[25] *See Moncrieffe*, 133 S. Ct. at 1684.

A firearm is "brandished" when all or part of the firearm is displayed or made known to another person in order to intimidate that person.[26] Thus, from the two convictions combined, we know that in committing robbery Robinson (1) used or threatened force, violence, or injury to person or property, and (2) used a firearm in order to intimidate a person.

This approach may not always be appropriate. The definition of "crime of violence" still directs courts to look at the *elements* of an offense. As such, the value in examining contemporaneous convictions is in elucidating what may be an otherwise ambiguous element in the statute. It is possible that Robinson's far-fetched scenarios could provide a basis for conviction under 18 U.S.C. § 1951(a), but the combined convictions before us make clear that the "actual or threatened force, or violence, or fear of injury" in Robinson's Hobbs Act robbery sprang from the barrel of a gun. Accordingly, we will affirm Robinson's conviction under 18 U.S.C. § 924(c).

## IV.

We now turn to Robinson's challenges to the District Court's denial of his suppression motion, the failure to conduct a *Faretta*[27] hearing, and his classification as a "career offender" for sentencing purposes. We hold that the District Court did not err in denying Robinson's motion to suppress or in failing to conduct a *Faretta* hearing. However, we will remand Robinson's case for further sentencing proceedings.

---

[26] 18 U.S.C. § 924(c)(4).
[27] *Faretta*, 422 U.S. 806

14

**A.**

We review a ruling on the admission of identification testimony for abuse of discretion.[28]    An eyewitness identification that arises from an identification procedure that is unnecessarily suggestive and carries a substantial risk of misidentification may be suppressed under the Due Process clause of the Fifth Amendment.[29]  A defendant seeking to suppress identification testimony has the burden of proving that the identification procedure used was unnecessarily suggestive.[30]   "The suggestiveness of a photographic array depends on several factors, including the size of the array, its manner of presentation, and its contents.   If there is no prejudice in the manner of presentation, the primary question is whether the suspect's picture is so different from the rest that it suggests culpability."[31]  We review a finding that a photo array was not unnecessarily suggestive for clear error.[32]

Robinson argued before the District Court that the photo array used to identify him was unduly suggestive because Robinson's photo was "noticeably lighter than the others" and Robinson was "the only individual wearing a shirt with a collar."   The District Court concluded that these differences were "slight" and were not unduly suggestive. The difference in lighting was found to be "within the range

---

[28] *United States v. Brownlee*, 454 F.3d 131, 137 (3d Cir. 2006).

[29] *Brownlee*, 454 F.3d at 137.

[30] *United States v. Lawrence*, 349 F.3d 109, 115 (3d Cir. 2003).

[31] *Reese v. Fulcomer*, 946 F.2d 247, 260 (3d Cir. 1991).

[32] *United States v. Burnett*, 773 F.3d 122, 130 (3d Cir. 2014).

of variation of all the photographs, some of which are darker than the others," while the presence of a collar did not stand out among the "variation in necklines of the shirts" in the array's other photographs. We see no indication that the District Court clearly erred in reaching this conclusion.

Robinson raises for the first time on appeal the additional arguments that the array was unduly suggestive because of its size, because most of the other individuals have darker complexions than Robinson, and because his photograph was one of only two that has gray facial hair. However, a suppression argument raised for the first time on appeal is waived absent good cause.[33] Robinson has not demonstrated good cause for his failure to raise these arguments, so we will not consider them.

Because the District Court did not clearly err and because Robinson's additional arguments have been waived, we will affirm the District Court's dismissal of Robinson's suppression motion.

**B.**

We next turn to Robinson's allegation that the District Court erred in failing to conduct a *Faretta* inquiry following Robinson's requests to proceed *pro se*. We exercise plenary review of a claim that a District Court's ruling violated a defendant's right of self-representation.[34]

The Sixth Amendment affords all criminal defendants

---

[33] *United States v. Rose*, 538 F.3d 175, 182 (3d Cir. 2008)

[34] *United States v. Peppers*, 302 F.3d 120, 127 (3d Cir. 2002).

16

the right "to have the Assistance of Counsel" for their defense.[35] This right "carries as its corollary the right to proceed *pro se*."[36] The Supreme Court addressed the contours of a defendant's right to self-representation in *Faretta v. California*, where the Court emphasized that "[t]he language and spirit of the Sixth Amendment contemplate that counsel, like other defense tools guaranteed by the Amendment, shall be an aid to a willing defendant—not an organ of the State interposed between an unwilling defendant and his right to defend himself personally."[37] However, because a defendant who chooses to represent himself relinquishes a number of benefits that come with the assistance of counsel, any defendant seeking to proceed *pro se* must "knowingly and intelligently" relinquish the assistance of counsel.[38] Courts have the responsibility to engage in a "*Faretta* inquiry" to determine that a defendant's request to proceed *pro se* has been made knowingly and intelligently. In *United States v. Peppers*, we set forth three requirements that must be satisfied before a defendant may represent himself:

> 1. The defendant must assert his desire to proceed *pro se* clearly and unequivocally.
> 2. The court must inquire thoroughly to satisfy itself that the defendant understands the nature of the charges, the range of possible punishments, potential

---

[35] U.S. Const. Amend. VI.

[36] *Peppers*, 302 F.3d at 129.

[37] 422 U.S. 806, 820 (1975).

[38] *Id.* at 835; *see Johnson v. Zerbst*, 304 U.S. 458, 464-65 (1938) (holding that a waiver of constitutional rights must be knowing and intelligent).

defenses, technical problems that the defendant may encounter, and any other facts important to a general understanding of the risks involved.

3. The court must assure itself that the defendant is competent to stand trial.[39]

Robinson requested to proceed *pro se* on two occasions. On the first occasion, when the request was made in a written motion, the District Court held a hearing to ascertain Robinson's understanding of the law surrounding his charges. In the midst of this hearing, Robinson informed the court that he had decided to retain counsel. While Robinson suggests that the District Court's hearing was "coercive" and caused him to "acquiesce" to retaining representation, the record shows that the District Court in informing Robinson of the risks of self-representation, noted that his lawyer was an experienced defense lawyer well-versed in the issues that Robinson sought to raise. This is not coercive. It is exactly what a court is required to do when adjudicating a request to proceed without counsel.[40]

Robinson's second request came following a hearing on Robinson's motion to suppress. As the hearing concluded, Robinson announced that he had a motion to file, which his counsel confirmed was a notice that Robinson wished to proceed *pro se*. Rather than addressing Robinson's desire to proceed *pro se*, the Court requested that counsel file any

---

[39] *Peppers*, 302 F.3d at 132 (internal quotations and citations omitted).

[40] *See id.* at 133 (noting that a proper *Faretta* inquiry requires "specific forewarning of the risks that foregoing counsel's trained representation entails.").

18

relevant motion. Although Robinson's counsel informed the court that she would file the motion, no motion was filed. When Robinson's trial began, Robinson's counsel advised the court that there were no outstanding issues. Given these facts, we cannot say that Robinson expressed his desire to proceed *pro se* "clearly and unequivocally," as required by *Peppers*: no motion was filed and the issue was not raised again after its brief mention at the end of Robinson's suppression hearing. Without a clear and unequivocal request to proceed *pro se*, a *Faretta* inquiry is not necessary.[41] Thus, we hold that Robinson's right to self-representation was not abridged by the District Court's failure to conduct a second *Faretta* inquiry.

## C.

The final issue in this appeal is Robinson's challenge to his classification as a "career offender" under the Sentencing Guidelines. Because Robinson did not object to his classification at sentencing, there is an inadequate record to review this claim. The government has conceded, however, that the issue of whether Robinson qualifies as a career offender should, in the interests of justice, be remanded to the District Court to determine whether the career offender provision under U.S.S.G. § 4B1.1 applies. We agree.

Accordingly, we will remand the case for further sentencing proceedings.

## V.

For the reasons stated above, we will affirm

---

[41] *Id.* at 132.

19

Robinson's convictions under § 924(c) and § 1951(a). However, we will remand the case for further sentencing proceedings so that the District Court may determine if Robinson's prior convictions were crimes of violence under the career offender guideline.

FUENTES, *Circuit Judge*, concurring in part and concurring in the judgment.

After a jury trial, defendant Anthony Robinson was found guilty of two counts of Hobbs Act robbery[1] and one count of using a firearm during the commission of a crime of violence[2] for robbing two Philadelphia stores. Robinson demanded money from the cash register while brandishing a firearm. Among other things, he appeals his Section 924(c) conviction, arguing that Hobbs Act robbery is not a "crime of violence" within the meaning of Section 924(c). After finding the categorical approach unnecessary here, the majority affirms Robinson's Section 924(c) conviction because Robinson was simultaneously convicted of brandishing a firearm while committing a Hobbs Act robbery.[3] I depart from the majority that the categorical approach should not be used when the convictions are simultaneous.

Instead, I conclude that Congress intended for courts to use the categorical approach to determine what is or is not a "crime of violence" under Section 924(c). This position is advocated by both Robinson and the government, and is consistent with the Supreme Court's recent opinion in *Mathis v. United States* and the decisions of our sister circuits who have been confronted with the same question.[4]

---

[1] 18 U.S.C. § 1951(a).
[2] 18 U.S.C. § 924(c).
[3] Maj. Op. at 12.
[4] *See Mathis v. United States*, 136 S. Ct. 2243 (2016); *United States v. Hill*, 832 F.3d 135 (2d Cir. 2016); *United States v. Howard*, 650 F. App'x 466 (9th Cir. 2016) (unpublished).

**I.**

In my view, Congress intended Section 924(c)(3) to define "crime of violence" in terms of statutory elements of the contemporaneous conviction, rather than in terms of the actual underlying conduct of the defendant. My analysis is guided by the Supreme Court's decision in *Taylor v. United States*.[5] In that case, the Supreme Court found that Congress "intended the sentencing court to look only to the fact that the defendant had been convicted of crimes falling within certain categories, and not to the facts underlying the prior convictions"[6] to determine whether sentencing enhancements apply under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). It did so for three reasons.

First, the Court found that the text of Section 924(e) supports such a categorical approach by referring to persons who have "three previous convictions . . . for a violent felony or a serious drug offense,"[7] rather than persons who have committed violent felonies or serious drug offenses, and by defining "violent felony" as "any crime punishable by imprisonment for more than a year that 'has as an element'— not any crime that, in a particular case involves—the use or threat of force."[8] Second, legislative history is consistent with such an approach because though there was "considerable debate over what kinds of offenses to include and how to define them . . . no one suggested that a particular

---

[5] 495 U.S. 575 (1990).

[6] *Id.* at 600.

[7] 18 U.S.C. § 924(e)(1).

[8] *Taylor*, 495 U.S. at 600.

crime might sometimes count towards enhancement and sometimes not, depending on the facts of the case."[9]  Third, the Court was persuaded by "the practical difficulties and potential unfairness of a factual approach."[10]

Here, Section 924(c)(3)(A) likewise defines "crime of violence" as a felony that "*has as an element* the use, attempted use, or threatened use of physical force against the person or property of another," referring courts to the statutory elements, rather than to the underlying facts. Moreover, the legislative history of Section 924(c) similarly evinces congressional intent to define crime of violence in a categorical way rather than in a factual way.  The Senate report discussion of Section 924(c) included comments on which precise offenses are "crime[s] of violence" under the statute, but never which facts would qualify a conviction as a "crime of violence" and which facts would disqualify the same conviction.[11]

I agree with the majority that some of the "practical difficulties and potential unfairness"[12] concerns of a factual approach present in *Taylor* are not present in this case.  Here, Robinson was simultaneously convicted of both Hobbs Act robbery and Section 924(c), from which we can surmise without speculation that he brandished a gun while

---

[9] *Id.* at 601.

[10] *Id*.

[11] S. Rep. No. 98-225, at 312-13 (1983) (federal crimes such as the bank robbery statute and assault on federal officer statute are specifically discussed as prime examples of "crimes of violence").

[12] *Taylor*, 495 U.S. at 601.

committing the robberies. But I disagree that this alone renders the use of the categorical approach "unnecessary" when the statutory language and legislative history are as clear as those in *Taylor* that Congress intended courts to utilize a categorical approach to determining which crimes are "crimes of violence." Furthermore, taking a categorical approach avoids the circularity and ambiguity caused by the majority's position that "the determination of whether a particular crime qualifies as a 'crime of violence' under § 924(c) depends upon both the predicate offense, here Hobbs Act robbery, and the contemporaneous conviction under § 924(c)."[13] Indeed, other circuits have also taken this categorical approach to determine which offenses are "crimes of violence" under Section 924(c).[14]

This does not end our analysis because even when the statute calls for an elements-based analysis, the categorical approach is not always possible. As the Supreme Court explained in *Mathis v. United States*, "[t]he comparison of elements that the categorical approach requires is straightforward when a statute sets out a single (or 'indivisible') set of elements to define a single crime. The court then lines up that crime's elements alongside those of the generic offense and sees if they match."[15] The categorical approach fails when a statute sets out alternative (or "divisible") sets of elements, thereby creating multiple

---

[13] Maj. Op. at 9-10.
[14] *See Hill*, 832 F.3d at 139-44 (holding that Hobbs Act robbery is categorically a crime of violence under Section 924(c)); *Howard*, 650 F. App'x at 468 (same).
[15] 136 S. Ct. at 2248.

crimes within a single statute.[16]  Consequently, whether a defendant's violation of a divisible statute counts as a predicate crime depends on which of the alternative elements listed was actually committed, forcing courts to look beyond the statute and peek at documents such as "the indictment, jury instructions, or plea agreement and colloquy[] to determine what crime, with what elements, a defendant was convicted of.  The court can then compare that crime, as the categorical approach commands, with the relevant generic offense."[17]  This is the modified categorical approach.

As the Supreme Court has reiterated, however, the modified categorical approach is approved only "for use with statutes having multiple alternative elements."[18]  In other words, the simple fact that documents such as the indictment and the jury instructions are available does not mean that a court may look to them.  As the majority notes, the modified categorical approach is not meant to supplant the categorical approach where convenient, but "merely to help implement

---

[16] *Id.* at 2249.

[17] *Id*. (citation omitted).  The Supreme Court explains this phenomenon in the ACCA context, using the following illustration:  A state burglary law prohibits "'the lawful entry or the unlawful entry' of a premises with intent to steal, so as to create two different offenses . . . .  If the defendant were convicted of the offense with unlawful entry as an element, then his crime of conviction would match generic burglary and count as an ACCA predicate; but, conversely, the conviction would not qualify if it were for the offense with lawful entry as an element."  *Id.*

[18] 136 S. Ct. at 2249.

the categorical approach" when the court is confronted with a divisible statute.[19]

The Hobbs Act itself is a divisible statute. A person is in violation of the Hobbs Act if he "obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section."[20] In short, a person may violate the Hobbs Act by either robbery or extortion. But we are not asked whether a Hobbs Act violation is a crime of violence under Section 924(c). Instead, Robinson appeals only the question whether a Hobbs Act robbery, as defined by Section 1951(b), is a crime of violence.[21] With this limitation, I find that a Hobbs Act robbery is not a divisible statute.

Section 1951(b)(1) defines robbery as "the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property." At a glance, the phrase

---

[19] Maj. Op. at 9 (quoting *Descamps v. United States*, 133 S. Ct. 2276, 2285 (2013)); *see also United States v. Brown*, 765 F.3d 185, 190 (3d Cir. 2014) ("It bears repeating that the modified categorical approach is 'applicable only to divisible statutes.'").

[20] 18 U.S.C. § 1951(a).

[21] Appellant Br. at 3 ("Was Mr. Robinson wrongly convicted of brandishing a firearm under 18 U.S.C. § 924(c)(3), since Hobbs Act robbery, 18 U.S.C. § 1951(b), is not a categorical crime of violence . . . ?").

6

"by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property" is a disjunctive list. But a disjunctive list of "factual means of committing a single element" does not render a statute divisible, whereas a disjunctive list of elements would. [22] Therefore, we must determine whether this particular phrase is a list of alternative elements or a list of alternative means.

*Mathis* instructs that one way to distinguish elements from means is by looking at the charge in the indictment and "the correlative jury instructions"—for example, if the defendant is charged with "burgling a building, structure, or vehicle," then "each alternative is only a possible means of commission, not an element that the prosecutor must prove to a jury beyond a reasonable doubt."[23] The indictment and jury instructions in this case make clear that the statutory list of "actual or threatened force, or violence, or fear of injury, immediate or future, to [the victim's] person or property" are all alternative means of committing the element of unlawful taking against the victim's will, rather than alternative elements.[24] Indeed, the district judge specifically instructed

---

[22] *Mathis*, 136 S. Ct. at 2249.

[23] *Id.* at 2257 (internal quotation marks omitted).

[24] *See, e.g.,* App'x at 32-33 (indictment charging Robinson with "unlawfully [taking and obtaining] approximately $100 United States currency, property of Subway, from the person or in the presence of J.H., an employee of Subway known to the grand jury, and against J.H.'s will, by means of actual and threatened force, violence, and fear of injury, immediate and future, to her person and property, that is, by brandishing a handgun and using the handgun to threaten and intimidate the victim J.H.").

the jury that "[t]he government must prove beyond a reasonable doubt that the defendant unlawfully took the alleged victim's property against his or her will by actual or threatened force, violence or fear of injury, whether immediately or in the future," but that "[t]he government satisfies its burden of proving an unlawful taking if you unanimously agree that the defendant employed any of these methods."[25]

Accordingly, a strict categorical approach is the appropriate method for determining whether Hobbs Act robbery is a "crime of violence" under Section 924(c)(3). Nonetheless, for the reasons set out below, I concur with the majority that Robinson's 924(c) conviction should be upheld.

## II.

Using the categorical approach, I come to the same conclusion as the majority that Hobbs Act robbery is in fact a "crime of violence." Section 924(c)(3)(A) defines a crime of violence as any felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." Hobbs Act robbery is defined as "the unlawful taking or obtaining of personal property . . . by means of actual or threatened force, or violence or fear of injury, immediate or future, to his person or property."[26] The question is whether the list enumerated in the Hobbs Act robbery definition is broader than the list enumerated in Section 924(c)(3)(A).

---

[25] App'x at 535.
[26] 18 U.S.C. § 1951(b)(1).

I find persuasive the Second Circuit's recent decision in *United States v. Hill* on the same issue. In a well-reasoned opinion, that court held that all the alternative means of committing a Hobbs Act robbery, "actual or threatened force, or violence, or fear of injury," can satisfy Section 924(c)(3)(A)'s requirement of "use, attempted use, or threatened use of physical force" because the Supreme Court has already defined "physical force," in the context of defining a violent felony, to be simply "force capable of causing physical pain or injury to another person."[27] In other words, by definition, a jury could have found "actual or threatened force, or violence, or fear of injury" only if the defendant used, attempted to use, or threatened to use physical force because "fear of injury" cannot occur without at least a threat of physical force, and vice versa.[28]

---

[27] *Hill*, 832 F.3d at 141-42 (citing *Johnson v. United States*, 559 U.S. 133, 139-40 (2010)).

[28] Robinson argues that a Hobbs Act robbery cannot be a crime of violence because a defendant could commit a Hobbs Act robbery via non-violent means—for example, by threatening to throw paint on someone's house. The majority opinion did not address this argument because it was unnecessary under its analysis but the argument nonetheless fails even under the categorical approach. Physical force, as explained by the Supreme Court, connotes simply force that is violent enough to be capable of causing injury. *Johnson*, 559 U.S. at 140. No more, no less. Thus, as long as a jury finds that a threat to throw paint can cause a "fear of injury" sufficient to satisfy Hobbs Act robbery, then that defendant has also sufficiently "threatened [to] use physical force" to satisfy the "crime of violence" definition. Legislative history supports this position. Congress specifically singled out the

Accordingly, I find that Hobbs Act robbery is categorically a crime of violence under Section 924(c)(3).

In conclusion, I concur in the judgment of the majority and will affirm Robinson's Section 924(c) conviction.[29]

---

federal bank robbery statute as a crime that is the prototypical "crime of violence" captured by Section 924(c). *See* S. Rep. No. 98-225, at 312-13. Yet, the federal bank robbery statute, 18 U.S.C. § 2113(a), is analogous to Hobbs Act robbery. *See Howard*, 650 F. App'x at 468. Section 2113 may be violated by "force and violence, or by *intimidation*," just as the Hobbs Act robbery statute may be violated by "actual or threatened force, or violence, or *fear of injury*." From this, we can surmise that Congress intended the "physical force" element to be satisfied by intimidation or, analogously, fear of injury.

[29] In addition to concurring in the judgment, I concur with the majority's analysis in Section IV.